2010 ME 100

**Byron N. RAYNES**

v.

**DEPARTMENT OF CORRECTIONS et al.**

Supreme Judicial Court of Maine.

Argued: Sept. 16, 2010.

Decided: Oct. 14, 2010.

Lauren Wille, Student Attorney (orally), E. James Burke, Esq., Supervising Atty., Cumberland Legal Aid Clinic, Portland, ME, for Byron Raynes.

Janet T. Mills, Attorney General, Diane Sleek, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, ME, for Maine Department of Corrections.

Panel: ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

ALEXANDER, J.

[¶ 1] Pursuant to 5 M.R.S. § 11008 (2009) and M.R. Civ. P. 80C(m), Byron N. Raynes, an inmate at the Maine State Prison, appeals from a judgment of the Superior Court (Knox County, *Hjelm, J.*) affirming the Department of Corrections' denial of his grievance challenging the loss of his "grandfathered" property pursuant to a prison policy, 1A C.M.R. 03 201 010–32, –53 to –54 §§ 20.1(VI)(E)(7), 29.1(VI)(A)(7) (2006), after Raynes admitted to certain disciplinary violations.

Raynes contends that the Department: (1) incorrectly concluded that only a disciplinary appeal—not a grievance—could address the loss of property; and (2) violated his due process rights by failing to notify him that he could lose his grandfathered items and by depriving him of property that was not implicated by the disciplinary violations. We affirm.

## I. CASE HISTORY

[¶ 2] The following facts are not in dispute. On September 12, 2007, guards inspecting Raynes's cell at the Maine State Prison discovered two pornographic DVDs hidden under Raynes's video game discs. As a result, Raynes was charged with the disciplinary offenses of deception (Class A) and possession of an unauthorized item (Class C).[1] Two days later, Raynes admitted to these offenses and received a sanction of a twenty-day disciplinary restriction, a forty-day loss of "good time" deductions, a monetary sanction of $100, and indefinite loss of his video game player. Raynes waived his right to appeal.

[¶ 3] On September 14, 2007, Raynes was charged with two additional disciplinary offenses for evidence (Class A)[2] and possession (Class C) when a guard discovered another pornographic DVD inside his guitar foot pedal. Raynes again admitted to the offenses and received a twenty-day disciplinary segregation, a twenty-day loss of "good time" deductions, and another $100 monetary sanction. Raynes also waived his right to appeal from this decision. Upon review by the chief adminis-

trative officer, both disciplinary decisions were affirmed.

[¶ 4] After his release from segregation, Raynes discovered that some of his grandfathered property had been removed from his cell. Although Raynes had been allowed to retain these grandfathered items because they were in his possession before a 2004 policy change that prohibited the possession or purchase of such items, the items became contraband when Raynes was found to have committed a Class A disciplinary offense. The Department policy states:

> Any property item(s) grandfathered prior to or as of the original effective date of this policy are "grandfathered" only for the facility where the prisoner resided on that date. "Grandfathered" items shall not be transferable to other Department of Corrections facilities. *All "grandfathered" items shall become contraband if the prisoner is found guilty of a Class A or B disciplinary offense.* The prisoner shall be allowed to dispose of the contraband property using the Prisoner Property Contraband Disposition form . . ., except as otherwise set out in this policy and procedures.

Department of Corrections Policy 10.1(VI)(A)(7) (2004) (emphasis added); *see also* 1A C.M.R. 03 201 010–32 § 20.1(VI)(E)(7) ("A prisoner found guilty of a Class A or Class B disciplinary violation shall be required to dispose of all grandfathered personal property within thirty (30) days. . . .").

1. Deception is "[c]reating or reinforcing a false impression, including a false impression as to identity, value, knowledge or intention, for the purpose of depriving another party of money or other property." 1A C.M.R. 03 201 010–30 § 20.1(VI)(D) (2006). Possession is "[p]ossession of any item which was not issued to the prisoner, sold through the commissary, or otherwise authorized to be in the

prisoner's possession or unauthorized alteration of an authorized item." 1A C.M.R. 03 201 010–31 § 20.1(VI)(D).

2. An evidence violation involves "[w]illful destruction or concealment of any item that is evidence or appears to be evidence of a disciplinary violation or a crime." 1A C.M.R. 03 201 010–30 § 20.1(VI)(D).

[¶ 5] Raynes filed a grievance on November 14, 2007, seeking, among other things, the return of his grandfathered items. The grievance review officer concluded that the matter was not addressable by grievance because an appeal process already existed to deal with the issue in the disciplinary proceeding. *See* 1A C.M.R. 03 201 010–53 § 29.1(VI)(A)(1)(b) (2006) ("A grievance may not be filed regarding the following matters, since appeal procedures for handling these matters already exist: . . . Disciplinary procedures and decisions.").

[¶ 6] Raynes appealed from this decision to the chief administrative officer, who affirmed the ruling. Raynes appealed from this decision and received a ruling from the Commissioner of the Department dated December 18, 2007, indicating that the loss of the grandfathered property could not be addressed by grievance and that the loss of other, non-grandfathered items related to the use of the video game player had been appropriate.

[¶ 7] Raynes filed a petition for review of final agency action pursuant to 5 M.R.S. § 11001(1) and M.R. Civ. P. 80C. The Department moved to dismiss the appeal as untimely, arguing that an appeal was only properly taken from the earlier disciplinary decision, not from the rejection of his grievance. The court permitted the appeal to proceed and reached the merits of Raynes's argument.

[¶ 8] On December 3, 2009, the court affirmed the decision of the Department based on the applicable prison policy. Raynes timely appealed pursuant to 5 M.R.S. § 11008 and M.R. Civ. P. 80C.

## II. LEGAL ANALYSIS

[¶ 9] Raynes argues that he was denied a full and fair opportunity to challenge the loss of his property through the disciplinary process, including the appeal process, because he was not provided adequate notice that he could lose his grandfathered property. Accordingly, he argues that filing a grievance was the proper method to challenge the Department's action. Before addressing Raynes's due process arguments, we review the trial court's jurisdiction.

### A. Jurisdiction and Propriety of Grievance

[¶ 10] The determination of whether the Superior Court had jurisdiction in this matter depends on whether the grievance decision was a final agency action subject to appeal. *See* 5 M.R.S. § 11001(1) ("[A]ny person who is aggrieved by final agency action shall be entitled to judicial review thereof in the Superior Court."). By statute, a final agency action is "a decision by an agency which affects the legal rights, duties or privileges of specific persons, which is dispositive of all issues, legal and factual, and for which no further recourse, appeal or review is provided within the agency." 5 M.R.S. § 8002(4) (2009).

[¶ 11] Because Raynes appealed through all channels available to him and received a final decision on the grievance, *see* 1A C.M.R. 03 201 010–55 § 29.1(VI)(E)(3) (2006) (stating that the third level of review to the Commissioner is the final administrative level of appeal), that decision was properly on review before the Superior Court.

[¶ 12] We further conclude that the court correctly determined that, pursuant to Department policy, a grievance may not be filed regarding "[d]isciplinary procedures and decisions" because "appeal procedures for handling these matters already exist." 1A C.M.R. 03 201 010–53 § 29.1(VI)(A)(1)(b). Based on this language, the Department denied Raynes's grievance. In doing so, it applied its policy consistent with its plain language. The

remaining question is whether the application of this policy and other prison policies violated Raynes's due process rights.

## B. Due Process

 [¶ 13] While "[t]here is no iron curtain drawn between the Constitution and the prisons of this country," *Wolff v. McDonnell*, 418 U.S. 539, 555–56, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), courts are "reluctant to interfere with penal control and management." *Carlson v. Oliver*, 372 A.2d 226, 228 (Me.1977) (citing *Duncan v. Ulmer*, 159 Me. 266, 191 A.2d 617 (1963)); *see also Dep't of Corr. v. Superior Court*, 622 A.2d 1131, 1134–35 (Me.1993). "[W]hile persons imprisoned for crime enjoy many protections of the Constitution, it is also clear that imprisonment carries with it the circumscription or loss of many significant rights." *Hudson v. Palmer*, 468 U.S. 517, 524, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).

 [¶ 14] The right at stake in the present matter derives from section 1 of the Fourteenth Amendment of the United States Constitution ("No State shall … deprive any person of life, liberty, or property, without due process of law … .") and article I, section 6–A of the Maine Constitution ("No person shall be deprived of life, liberty or property without due process of law … ."). To protect parties' due process rights, parties must "be given notice of … any proceeding in which … property rights are at stake." *Hamill v. Bay Bridge Assocs.*, 1998 ME 181, ¶ 5, 714 A.2d 829, 831; *see also Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313–14, 70 S.Ct. 652, 94 L.Ed. 865 (1950). The notice must include an indication of the issues that will be addressed in the proceeding. *In re Destiny T.*, 2009 ME 26, ¶ 15, 965 A.2d 872, 876.

[¶ 15] Raynes contends that he was not afforded a full and fair opportunity to litigate loss of his grandfathered property during the disciplinary hearing because he was not put on notice that he would lose that property if he admitted to the violations. Thus, he contends that the grievance was properly before the Department for consideration.

[¶ 16] Raynes does not contest that he had notice of the proceeding; he argues only that he was not given notice of the property loss consequences that would result from his admitting to the offenses. These consequences are explicitly stated in the Department's policy: "A prisoner found guilty of a Class A or B disciplinary violation shall be required to dispose of all grandfathered personal property within thirty (30) days … ." 1A C.M.R. 03 201 010–32 § 20.1(VI)(E)(7).

[¶ 17] Because persons are presumed to know the law, *see Burggraff v. Baum*, 1998 ME 262, ¶ 8, 720 A.2d 1167, 1169, Raynes is presumed to have been aware of the mandated confiscation of his grandfathered property, which became contraband when Raynes admitted to the disciplinary offenses. Indeed, Raynes acknowledged his awareness of Department memoranda regarding changes in the grandfathering rules, writing in a brief to the Superior Court: "Yes there were many memos over the years since the initial one in 2001 concerning grandfathered items, and yes, there have been changes to the policies warning of loss of grandfathered property for rule violations … ." In these circumstances, Raynes was not deprived of due process by a lack of specific notice that he could lose his grandfathered property.

[¶ 18] Raynes further contends that the Department's policy authorizing the confiscation of grandfathered items upon the commission of a Class A or B disciplinary offense is unrelated to any Department security, rehabilitation, or prisoner behavior interest in his case and was

therefore unreasonable and violated due process.

[¶ 19] The Supreme Court has held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid *if it is reasonably related to legitimate penological interests.*" *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Accordingly, a regulation may be upheld if either (1) it does not limit an inmate's constitutional rights, or (2) although the regulation limits an inmate's constitutional rights, it is validly related to legitimate penological interests. *See id.* As described above, there was no limitation of constitutional rights in the present case. Because there was no due process violation, there is no need to consider the further question regarding the relationship of the prison policy to the Department's penological interests.

The entry is:

Judgment affirmed.