ENTERED NOV 0 3 2014

STATE OF MAINE
KENNEBEC, SS.

SUPERIOR COURT
LOCATION: Augusta
Docket No. AP-13-46
KEN-MMM- 10-30-2014

GEOFFREY D. REESE,

Petitioner,

v.

DEPARTMENT OF CORRECTIONS,

Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

**Order on Petitioner's M.R. Civ. P. 80C Appeal**

Petitioner Geoffrey Reese, a prisoner at the Maine State Prison ("Prison"), appeals from the denial by the Department of Corrections ("Department") of a grievance regarding the Prison's refusal to allow Petitioner to receive a pair of sneakers with a purchase price of more than $100. Petitioner's appeal centers on the Department's revision to Policy No. 10.1 prohibiting sneakers, shoes, or boots with a purchase price of more than $100 after Petitioner initiated an exchange to receive new sneakers, but before the sneakers arrived at the Prison. For the reasons discussed below, the Court affirms the Department's decision and denies Petitioner's appeal.

I.      **Factual and Procedural Background**

Petitioner contends that in May of 2013, he initiated a claim through Nike to exchange "defective" sneakers manufactured by Nike for new replacement sneakers, using a return process created by Nike. R. at 9. Petitioner contends that his replacement sneakers arrived at the Prison on June 12, 2013. *Id.*

On June 10, 2013, the Department Commissioner approved a revision to Policy Number 10.1 entitled "Prisoner Allowable Property." The Policy provided, in pertinent part, that the "maximum allowable amount for replacement / reimbursement for a single item is $100.00" and that the "[p]urchase price" of sneakers, shoes, and boots "may not exceed $100." Me. Dep't of Corr., Policy No. 10.1, § F(2); Attachment A to Policy No. 10.1, the Allowable Property List. The Policy also provides that a "property item considered non-allowable or contraband shall be confiscated immediately and handled as set out in Procedure F." Policy No. 10.1 § A. 21. Property is considered non-allowable property or contraband if it does not meet the description of an item on the Allowable Property List. *Id.* at § A(19)(a). Procedure F provides, in pertinent part, that "non-allowable personal property that is not contraband must be disposed of by the prisoner within thirty (30) days of when the prisoner is notified that it is not allowable." *Id.* at § F(7).

In his grievance, Petitioner contends he faced "discriminatory scrutiny" that resulted in the Prison denying his reception of the sneakers even though there was no written policy or stipulation regarding the value of sneakers at the time he initiated his claim for replacement sneakers. *See* R. at 9.[1] The version of Policy No. 10.1 in effect at the time Petitioner initiated his claim for new sneakers from Nike in May of 2013 did not contain a value limitation on sneakers. *See* Former Policy No. 10.1 (revised Jan. 22, 2010).

---

[1] In his grievance claim, Petitioner simultaneously contends that his sneakers arrived on June 12, 2013 and that they arrived before the revisions to Policy 10.1 went into effect on June 10, 2013. Petitioner's subsequent briefing clarifies that his sneakers arrived on June 12, 2013. Pet.'s Reply Brief, 4.

2

Petitioner brought his grievance to the Prison's property department for an attempt at informal resolution. R. at 7; *see* Me. Dep't of Corr., Policy No. 29.01 § B (requiring attempt at informal resolution prior to filing formal grievance). The informal grievance review officer noted that Petitioner had used additional money from a third party to upgrade the new sneakers received during the exchange to a value exceeding $100. *Id.* He also noted that Petitioner had been given the option to return the sneakers to the manufacturer for a less expensive pair and partial refund or to send the sneakers home. *Id.* Based on this information, the formal grievance review officer subsequently denied Petitioner's grievance. R. at 6.

Petitioner appealed the decision to the Prison's warden. In his appeal, Petitioner alleged that Nike would not exchange the new sneakers beyond thirty days. R. at 5. The Warden summarily denied the appeal. R. at 4. The Department Commissioner also summarily denied Petitioner's subsequent appeal. R. at 2.

## II.   Discussion

Petitioner contends the Department's decision prohibiting his Nike sneakers was based on an improperly adopted rule and violated violates his due process rights.[2] In particular, Petitioner argues: 1) the Nike claims process he utilized was authorized by the Department; 2) Petitioner commenced the claims process in May of 2013, before the revisions to Policy No. 10.1 prohibiting sneakers worth more

---

[2] Petitioner also purports to assert causes of action against the Department for negligent, discriminatory, and inequitable treatment. These causes of action are not properly asserted in a M.R. Civ. P. 80C appeal. M.R. Civ. P. 80C(c); 5 M.R.S.A. §§ 1107(2)-(4) (only permitting the court to affirm, reverse, modify, or remand the agency's decision for further proceedings). As discussed in greater detail below, even if the claims were properly raised, they would fail because the Department properly adopted Policy No. 10.1 and did not improperly infringe on any of Petitioner's rights.

than $100.00 went into effect; 3) the June 10, 2013 revisions to Policy No. 10.1 were improper because they were not adopted through the rule making process in Maine's Administrative Procedures Act ("APA"); and 4) as a result, the Department's modification to Policy No. 10.1 and prohibition against Petitioner's sneakers violated his right to due process and the APA.[3]

The Department responds that the decision to classify Petitioner's sneakers as non-allowable property and prohibit Petitioner from receiving them is supported by the evidence and the Department's reasonable interpretation of its own policy. The Department explains that the $100 limitation on the purchase price of sneakers bears a rational relationship to a legitimate security interest because such high-value footwear is "coveted among the inmates and could become the subject of barter, theft or extortion." Respondent's Brief, 4. Furthermore, the Department argues Policy No. 10.1 need not be formally adopted under the APA because it is intended solely as advice to assist persons in determining, exercising, or complying with legal rights, duties, or privileges. In particular, the Policy helps inmates determine what personal property or effects the Commissioner of the Department, in the broad discretion given to him by the Legislature, determines inmates may possess while incarcerated.

---

[3] Petitioner also asserts he was discriminated against under Policy No. 10.1 because other prisoners were allowed to obtain sneakers valued at more than $100 after Policy No. 10.1 went into effect. In support, Petitioner appears to point to a written statement from Dan Roberts. Mr. Roberts asserts he utilized the Nike claims process to obtain a new pair of sneakers after the revisions to Policy No. 10.1 went into effect on June 10, 2013. Mr. Roberts does not however, assert that the pair of shoes he obtained were valued at more than $100. In addition, Petitioner did not seek to properly introduce Mr. Roberts' statement as additional evidence under M.R. Civ. P. 80C(e), and Mr. Roberts' statement does not swear to its veracity.

4

A.    Standard of Review

The Department's decision is reviewed for errors of law, abuse of discretion, or findings not supported by substantial evidence in the record. *Beauchesne v. Dep't of Health & Human Servs.*, 2009 ME 24, ¶ 11, 965 A.2d 866. The Court gives considerable deference to the agency's interpretation of its own rules, regulations, and procedures, and will not set aside the agency's findings "unless the rule or regulation plainly compels a contrary result." *Id.* (citation and quotations omitted). The Court will not "attempt to second-guess the agency on matters falling within its realm of expertise[.]" *Id.* (citation and quotation omitted).

The Court will only vacate agency factual findings when they are clearly erroneous and will uphold findings if the agency "could have fairly and reasonably found the facts as it did." *Suzman v. Comm'r, Dep't of Health & Human Servs.*, 2005 ME 80, ¶ 24, 876 A.2d 29.

B.    Whether Policy No. 10.1 Constitutes a Rule Requiring its Promulgation Through Maine's APA

Petitioner contends the revisions to Policy No. 10.1 constitute a rule making, which must comply with the Maine's APA. An agency, however, may "provide guidance for its employees and the public without adopting the guiding materials as rules, as long as those materials are not intended to have, and are not given, the force and effect of law." *Roderick v. State*, 2013 ME 34, ¶ 9, 79 A.3d 368 (quoting *Downeast Energy Corp. v. Fund Ins. Review Bd.*, 2000 ME 151, ¶ 23, 756 A.2d 948). An agency is not required to promulgate rules defining every statutory term that might be called into question. *Id.* (quoting *Cobb v. Bd. of Counseling Prof'ls Licensure*, 2006 ME 48, ¶ 24, 896 A.2d 271).

5

The APA defines a "rule" as:

> [T]he whole or any part of every regulation, standard, code, statement of policy, or other agency guideline or statement of general applicability, including the amendment, suspension or repeal of any prior rule, that is or is intended to be judicially enforceable and implements, interprets or makes specific the law administered by the agency, or describes the procedures or practices of the agency.
> ....
> A rule is not judicially enforceable unless it is adopted in a manner consistent with [the APA].

5 M.R.S. § 8002(9), (9)(A). A rule does not include:

> Policies or memoranda concerning only the internal management of an agency or the State Government and not judicially enforceable; [or]
> ....
> Any form, instruction or explanatory statement of policy that in itself is not judicially enforceable, and that is intended solely as advice to assist persons in determining, exercising or complying with their legal rights, duties or privileges.

Id. § 8002(9)(B). The term "judicially enforceable" is not defined in the APA.

*Roderick*, 2013 ME 34, ¶ 11, 79 A.3d 368.

In *Roderick*, the Law Court determined that a policy regarding the deduction of time from a term of imprisonment due to the fulfillment of assigned responsibilities was not a "rule" within the meaning of the APA. The policy at issue interpreted 17-A M.R.S. § 1253(10)(B), which explained that two days per calendar month could be taken off a term of imprisonment based on a person's fulfillment of responsibilities in the person's transition plan for community work, education or rehabilitation programs. The Department policy provided that an inmate could only receive the two days credit referenced by:

> (1) working outside of the prison in the community; (2) participating in a "comprehensive, dedicated community transition program...during the last year of the prisoner's institutional confinement"; or (3) participating in an "evidence based community

6

risk reduction program...during the last year of the prisoner's institutional confinement."

*Roderick*, 2013 ME 34, ¶ 6, 79 A.3d 368.

In determining that the policy did not constitute a "rule," the Court explained that based on the plain meaning of the term "judicially enforceable," the Department policy was:

> [N]ot intended to be judicially enforceable because the Department would never have an occasion to ask a court to order anyone to comply with it. Rather, the policy is an instruction or explanatory statement of policy that in itself is not judicially enforceable, and that is intended solely as advice to assist [DOC staff] in determining, exercising or complying with their legal...dut[y] to administer the good time provision created by section 1253(10)(B).

*Id.* at ¶ 11 (citation and quotation omitted). *Roderick* also explained that the court's role was to determine whether the policy was lawful, not to enforce it. *Id.* at ¶ 11 n.4. In other words, the court looked at whether the Department's implementation of section 1253(10)(B), as interpreted by the policy, was consistent with the terms of the statute. *Id.*

Here, there are no statutes or rules specifically governing what personal property or effects a prisoner may possess while incarcerated. *See generally* 34-A M.R.S. §§ 1001-4204. Instead, the question of what personal property a prisoner may possess is left to the discretion of the Commissioner of the Department. *See* 34-A M.R.S. § 1403(1) ("The commissioner may perform any legal act relating to the care, custody, treatment, relief and improvement of client..."). The Law Court has recognized this broad grant of discretion explaining that while "[t]here is no iron curtain drawn between the Constitution and the prisons of this country," courts are "reluctant to interfere with penal control and management." *Raynes v. Dep't of Corr.*,

2010 ME 100, ¶ 13, 5 A.3d 1038 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 555-56 (1974) & *Carlson v. Oliver*, 372 A.2d 226, 228 (Me. 1977). Accordingly the Court finds that similar to *Roderick*, Policy No. 10.1 is not judicially enforceable, and therefore does not require promulgation as a rule. This is because Policy No. 10.1, and its restrictions on the value of sneakers, simply offers instructions and an explanatory statement of policy regarding what possessions the Commissioner, in his discretion, determined are appropriate in light of the care, custody, treatment, relief, and improvement of the prisoners. *See* 34-A M.R.S. § 1403(1). Furthermore, in light of the broad discretion given the Commissioner in interpreting section 1403 and the Department's explanation that Policy No. 10.1's $100 limitation on sneaker value is due to security interests about the sneakers becoming the subject of barter, theft or extortion, the Department properly interpreted section 1403 to prohibit sneakers with a purchase price of more than $100.

C.      <u>Whether the Department's Enforcement of Policy No. 10.1's $100 Purchase Price Limit on Sneakers Violated Petitioner's Right to Procedural Due Process</u>

Petitioner contends the Department's prohibition of his sneakers deprived him of his due process rights. The Maine and the United States Constitution provide that no person shall be deprived of property without due process of law. U.S. CONST. amend. XIV, § 1; Me. CONST. art. I, §6-A. Procedural due process claims are reviewed in two steps:

> First, we determine if the government has deprived a claimant of life, liberty or property interests. Second, if such deprivation occurred, we then determine what process, pursuant to the Fourteenth Amendment, is due utilizing the factors in *Matthews v. Eldridge*, 424 U.S. 319 (1976).

8

*DaimlerChysler Corp. v. Me. Revenue Servs.*, 2007 ME 62, ¶ 26, 922 A.2d 465

(citations omitted). The *Eldridge* factors assess:

> First, the private interest that will be affected by the official action;
> second, the risk of an erroneous deprivation of such interest through
> the procedures used, and the probable value, if any, of additional or
> substitute procedural safeguards; and finally, the Government's
> interest, including the function involved and the fiscal and
> administrative burdens that the additional or substitute procedural
> requirement would entail.

*Id.* at ¶ 26 (citing *Matthews v. Eldridge*, 424 U.S. at 355). "[W]hile persons

imprisoned for crime enjoy many protections of the Constitution, it is also clear that

imprisonment carries with it the circumscription or loss of many significant rights."

*Raynes*, 2010 ME 100, ¶ 13, 5 A.3d 1038 (quoting *Hudson v. Palmer*, 468 U.S. 517,

524 (1984)).

Here, Former Policy No. 10.1 arguably created a property interest in

Petitioner to the sneakers he obtained through the Nike claims process.[4] The

Department's modification of the Policy to prohibit sneakers with a purchase price

of more than $100 deprived Petitioner of this alleged right to utilize the new

sneakers. Assuming for the sake of argument that a deprivation of a property

interest occurred, the Court analyzes whether due process was provided under the

---

[4] The Department contends no property interest is implicated because the revisions
to Policy No. 10.1 do not present a dramatic departure from basic conditions of
confinement or impose an "atypical and significant hardship" relying on *Sandin v.
Conner*, 515 U.S. 472, 484 (1995). As the Department points out there is a circuit
split as to whether the Supreme Court's holding in *Sandin* is limited to liberty
interests or extends to property interests. Compare *Cosco v. Uphoff*, 195 F.3d 1221,
1223-24 (10th Cir. 1999) with *Bulger v. U.S. Bureau of Prisons*, 65 F.3d 48, 50 (5th
Cir. 199). The Court need not resolve this issue because, as explained further above,
even if Petitioner had a protected property interest, the modification of Policy No.
10.1 to take that property away did not violate Petitioner's procedural due process
rights.

9

*Eldridge* factors. Faced with a similar dispute, a Washington state appellate court found that the inmates had a protected property interest in their personal clothing and that the Washington Department of Corrections deprived them of their personal clothing when it amended and enforced a DOC policy. *Greenhalgh v. Dep't of Corr.*, 180 Wash.App. 876, 891. *Greenhalgh* determined, however, that the Department did not deprive the inmates of due process because the Department gave them at least three notices about the policy change, the DOC had a grievance process set up to hear the inmates' complaint, and the danger of erroneous deprivation of property was minimized because the inmates "could direct where their property went or whether it was disposed of." *Id.; See e.g. Munson v. Gaetz*, 673 F.3d 630, 637-38 (7th Cir. 2012) (prison's decision to prohibit inmate from having books he ordered did not deprive him of property interest without due process where officials had legitimate and neutral government reason to restrict prisoner access to books, prison provided inmate with written notice explaining why he could not possess books, meaningful chance to be heard by prison officials, and prison sent the ordered books to member of inmate's family); *Howard v. Swenson*, 314 F.Supp. 883, 884 (W.D. Mo. 1969) (no federal civil rights act claim raised by seizure of prisoner's shoes under legally questionable regulation even with benefit of inferences most favorable to the prisoner); *Inmates, Washington County Jail v. England*, 516 F.Supp. 132, 139 (E.D. Tenn. 1980) (denying inmate use of shower shoes did not violate due process rights, noting that "the fact that...detention interferes with the detainee's understandable desire to live as comfortably as possible...during confinement does not convert the conditions or restrictions of detention into 'punishment.'") (quoting

10

*Bell v. Wolfish*, 441 U.S. 520, 536-37 (1979)); *Almond v. Kent*, 321 F.Supp. 1225 (W.D. Va. 1970) , revd on other grounds 459 F.2d 200 (4th Cir. 1972) ("While no reason appears why the prisoner's shoes were taken from him, it is difficult to see that this alleged act deprived Almond of his civil rights. The allegation is frivolous and inconsequential"); *Escobar v. Landwehr*, 837 F.Supp. 284, 288 (W.D. Wis. 1993) (finding no property interest when state law vests permission to possess or obtain certain property in an official's discretion rather than the application of concrete rules); *Bryant v. Barbara*, 11 Kan.App.2d 165, 167 (1986) (reasonable restrictions may be imposed on the type and amount of personal property inmates are allowed to possess in prison); *Meis v. Houston*, 19 Neb.App. 504, 507-508 (2012) (holding that prisoner does not have a protected property interest in the possession or use of property while in prison and because he was not deprived of ownership of the excess property, a takings clause claim was meritless).

In this case, while there is no evidence that Petitioner received advance notice of the Policy change, the Department provided Petitioner with ample procedure through the grievance process and the option of sending the replacement sneakers home.[5] R. at 6. Furthermore, the Department explained that it adopted the $100 limitation on sneaker values out of a security interest caused by the fact that many inmates desire sneakers costing more than $100 and that said sneakers could become the subject of barter, theft, or extortion. Respondent's Brief, 4. Accordingly, in light of the valid objectives the Department sought to pursue, the fact that

---

[5] Policy No. 29.01 establishes a grievance process for reviewing and resolving general prisoner complaints. The grievance process, which Petitioner went through, involves an opportunity to informally resolve the grievance, followed by three levels of administrative review of the prisoner's grievance.

11

Petitioner had the option of sending the shoes home, and the availability of the grievance process, Petitioner's procedural due process rights have not been violated.[6]

D.     Whether the Department's Enforcement of Policy No. 10.1's $100 Limit on Sneakers Violated Petitioner's Right to Substantive Due Process

Federal and Maine due process rights are coextensive. *State v. Millikin*, 2010 ME 1, ¶ 16, 985 A.2d 1152. As noted, convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison, but "simply because prison inmates retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Id.* at 545-46 (quoting *Price v. Johnston*, 334 U.S. 266, 285 (1948). "The fact of confinement as well as the legitimate goals and policies of the penal institution limits these retained constitutional rights." *Id.* at 546. "There must be a 'mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application.'" *Id.* (quoting *Wolff v. McDonnell*, 418 U.S., 539, 556 (1974).

---

[6] The Department also provided Petitioner the option of returning the sneakers to Nike and having them replaced with a pair with a purchase price not exceeding $100.00. Petitioner argued, for the first time, in his appeal from the Level I response from the Grievance Review Officer that he could not exchange or refund the sneakers through Nike because it was beyond 30 days from the date of Petitioner's receipt. Regardless of whether Petitioner could return or exchange the sneakers, the Department provided Petitioner with ample process.

"[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Id.* "[C]entral to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves." *Id.* at 546-47 (quoting *Pell v. Procunier*, 417 U.S. 817, 823 (1974). "Prison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel and to prevent escape or unauthorized entry." *Id.* at 547. Therefore, "even when an institutional restriction infringes a specific constitutional guarantee...the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security." *Id.* Furthermore, "[p]rison administrators...should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.* "Such considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." *Id.* at 547-48 (quoting *Pell v. Procunier*, 417 U.S. at 827.

Due process rights are subject to reasonable limitation or retraction in light of the legitimate security concerns of the institution. *Id.* at 554. "It is enough to say that" a policy designed to address legitimate security concerns is valid as long as the Department has "not been conclusively shown to be wrong in this view." *Id.* at 555

13

(upholding policy prohibiting inmates from receiving packages from outside the facility containing items of food or personal property except for one package of food at Christmas) (quoting *Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 132 (1977).

Here, the Department explained that the $100 limitation on the purchase price of sneakers bears a rational relationship to a legitimate security interest based on the Department's assessment that such high-value footwear is "coveted among the inmates and could become the subject of barter, theft or extortion." Respondent's Brief, 4. In light of the deference provided the Department in addressing security concerns, the Court cannot say that the Department has been shown to be conclusively wrong in its view. Accordingly, Policy No. 10.1's restriction on sneakers worth more than $100 does not violate Petitioner's substantive due process rights.

## III.  Conclusion

For the reasons discussed above, Petitioner's appeal is denied. The Department's revisions to Policy No. 10.1 were properly executed because the Policy was not a rule within the meaning of the Administrative Procedures Act. Furthermore, the Petitioner's due process rights were not violated, nor has Petitioner presented any evidence of disparate or unequal treatment.

14

The entry will be: Petitioner's M.R. Civ. P. 80C appeal is DENIED.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this

Order by reference in the docket.

Dated: October 3, 2014

**Michaela Murphy, Justice**
**Maine Superior Court**

Date Filed 12/13/13          Kennebec          Docket No. AP-13-46          F
                             County

Action: Petition for Review          **J. Murphy**
         80C


Geoffrey D. Reese                    vs.          Maine Dept of Corrections
                                                  Joseph Ponte, Commissioner
                                                  Robert Bouffard, Warden
                                                  James Sturks, Correctional Officer

---

Plaintiff's Attorney                              Defendant's Attorney

Geoffrey D. Reese, Pro Se                         James Fortin, AAG
Maine State Prison                                6 State House Station
807 Cushing Road                                  Augusta, ME 04333
Warren, ME 04864


Date of Entry

---

| Date | Entry |
|------|-------|
| 12/17/13 | Petition for Review, filed (12/13/13). s/Reese, Pro Se |
| 12/17/13 | Application to Proceed without fee, filed (12/13/13). s/Reese, Pro Se |
| 12/19/13 | Application to Proceed without fee, GRANTED. Murphy, J. <br> It is ORDERED that the SERVICE COSTS shall be paid as an expense of Administration The Court finds that the applicant has the ability to pay all or part of the filing fee. It is ORDERED that the applicant pay $100.00 toward the filing fee. Copy sent to Geoffrey Reese. |
| 12/31/13 | Letter from Petitioner, filed 12/18/13. s/Reese, Pro Se |
| 12/31/13 | Letter from Petitioner, filed. s/Reese, Pro Se |
| 01/08/14 | Letter sent to Petitioner in response to letters filed 12/18 and 12/31. s/Lumbert, Clerk |
| 01/14/14 | Entry of Appearance for Maine Dept of Corrections, filed (1/10/14). s/Fortin, AAG |
| 01/21/14 | Partial Payment of filing fee ($50.00). Filed (1/10/14), s/Reese, Pro Se |
| 01/21/14 | Final Payment of filing fee ($50.00). Filed (1/11/14), s/Reese, Pro Se |
| 01/21/14 | Proof of Service by mail, filed (1/11/14). s/Reese, Pro Se |
| 01/21/14 | Proof of Service by mail, filed (1/11/14). s/ Reese, Pro Se |
| 01/21/14 | Motion to Enlarge Time to File Record, filed (1/17/14). s/Fortin, AAG |
| 01/21/14 | Motion to Modify Order, filed (1/17/14). s/Fortin, AAG |

| 1/29/13 | Objection to Motion to Modify order regarding filing fee and Motion to Enlarge, filed. s/Reese Pro Se. |
| --- | --- |
| 2/19/13 | ORDER, Murphy, J (2/14/14)<br>The Motion is GRANTED in part.<br>Respondent shall file record within 10 days after petitioner pays $100.00 fiing fee ordered by the court, at the rate of $50.00 per month, starting 2/7/14. The balance of the fee ($50.00) shall be paid in full by 6/4/14. |
| 2/19/14 | Letter filed, (2/18/14). s/Fortin, AAG<br>Attorney Fortin wants to withdraw his Motion to Enlarge time to file record. However, he is not withdrawing his Motion regarding filing fee since statute clearly requires payment of the entire filing fee.<br>By copy of this letter to Mr. Reese, Attorney Fortin points out the requirement of Rule 5(a) of the Maine Rules of Civil Procedure that he serve by regular mail a copy of anything he files with the court. Attorney Fortin did not learn of opposition to motion until he called the courts to check on status of matter. |
| 2/25/14 | Certified Record, filed (2/18/14). s/Fortin, AAG |
| 2/25/14 | Notice and Briefing Schedule issued. Copy to Attorney Fortin, Geoffrey Reese, Pro Se |
| 3/19/14 | Letter from Petitioner, filed (3/17/14). s/Reese, Pro Se |
| 3/19/14 | Letter sent to Petitioner in response to letter filed 3/17/14. s/Lumbert, Clerk |
| 3/25/14 | Motion for the Power of Court to Correct or Modify Record and Allow Additional Evidence, filed 3/20/14. s/Reese, Pro Se |
| 3/25/14 | Offer of Proof for Request for Additional Evidence, filed 3/20/14. s/Reese, Pro Se |
| 3/25/14 | Motion to Enlarge Time for Filing of Brief, filed 3/20/14. s/Reese, Pro Se |
| 4/3/14 | Letter concerning discovery, and request to store discovery material for "safe keeping" with the court, filed 4/2/14. s/Reese, Pro Se<br>Discovery, filed 4/2/14. |
| 4/3/14 | Motion to Amend Petition for Review, filed 4/2/14. s/Reese, Pro Se |
| 4/3/14 | Witness for the Plaintiff to be Subpoenaed, filed 4/2/14. s/Reese, Pro Se |
| 4/3/14 | Motion for a Writ of Transport and Remand, filed 4/2/14. s/Reese, Pro Se |
| 4/3/14 | Request to Subpoena Witnesses for Depositions, Trial, and to Produce Evidence, filed 4/2/14. s/Reese, Pro Se |
| 4/3/14 | Motion for Order to Wear Civilian Attire, filed 4/2/14. s/Reese, Pro Se |
| 4/9/14 | Opposition to Motion to Correct or Modify Record, filed 4/7/14. s/Fortin, AAG |
| 4/15/14 | Motion for Request to File Discovery for Safekeeping with Clerk, filed 4/11/4. s/Reese, Pro Se |

| 4/17/14 | Memorandum in Support of Law (Brief), filed 4/11/14. (Photocopy) s/Reese, Pro Se |
|---|---|
| 4/17/14 | Consolidated Opposition To Motions, filed. s/Fortin, AAG |
| 4/24/14 | Memorandum in Support of Motion to Correct or Modify Record and Order of Proof, filed 4/23/14. s/Reese, Pro Se. |
| 4/24/14 | ORDER, Murphy, J. (Motion to Enlarge Time for Filing of Brief)<br>Motion granted. The Petitioner shall have an additional 40 days to file his brief in the matter, no later than 4/11/14.<br>Copy to Petitioner and AAG Fortin |
| 5/1/14 | Amended Motion to File Discovery, filed s/Reese, Pro Se<br>Discovery Before Action Request, with attachments, filed. s/Reese, Pro Se |
| 5/12/14 | Brief of the Respondent, filed. s/Fortin, AAG |
| 5/12/14 | Copy of Certified Record, with Certificate of Kelene Barrows, filed. s/Fortin, AAG |
| 5/15/14 | Letter from Petitioner requesting copy of docket entries, filed 5/14/14. s/Reese, Pro Se |
| 5/15/14 | Docket record sent to Petitioner. |
| 5/28/14 | ORDER, Murphy, J. (5/23/14) (Motion for the Power of Court to Correct or Modify Record and Allow Additional Evidence filed 3/20/14.)<br>DENIED. See 5 M.R.S. 11006(1)(b)<br>Copy to Petitioner and AAG Fortin |
| 5/28/14 | ORDER, Murphy, J. (5/23/14) (Motion to Amend Petition for Review filed 4/2/14.)<br>DENIED. See Glynn v. City of Portland 640 A. 2d 1065 (Me. 1988)<br>Copy to Petitioner and AAG Fortin |
| 5/28/14 | ORDER, Murphy, J. (5/23/14) (Motion for a Writ of Transport and Remand filed 4/2/14.)<br>DENIED.<br>Copy to Petitioner and AAG Fortin |
| 5/28/14 | ORDER, Murphy, J. (5/23/14) (Request to Subpoena Witnesses for Depositions, Trial, and to Produce Evidence filed 4/2/14.)<br>DENIED<br>Copy to Petitioner and AAG Fortin |
| 5/28/14 | ORDER, Murphy, J. (Motion for Order to Wear Civilian Attire filed 4/2/14.)<br>DENIED<br>Copy to Petitioner and AAG Fortin |
| 5/28/14 | ORDER, Murphy, J. (Motion for Request to File Discovery for Safekeeping with Clerk filed 4/11/14.)<br>DENIED<br>Copy to Petitioner and AAG Fortin |

| | |
|---|---|
| 5/30/14 | ORDER, Murphy, J. (Witness for the Plaintiff to be Subpoenaed filed 4/2/14.) DENIED Copy to Petitioner and AAG Fortin |
| 5/30/14 | Discovery filed by Petitioner on 4/2/14 returned to Petitioner per 5/28/14 Order denying motion for request to file discovery for safekeeping with clerk. |
| 5/30/14 | Plaintiff's Reply Brief, with attachments, filed 5/28/14. s/Reese, Pro Se |
| 6/10/14 | Letter regarding filing fee, requesting clarification, w/ attachment, filed. s/Reese, Pro Se |
| 6/13/14 | Opposition to Motion to Reconsider, filed 6/11/14. s/Fortin, AAG Opposition to Motion for Summary Judgment, filed 6/11/14. s/Fortin, AAG |
| 6/16/14 | Motion to Reconsider Motion to Amend, filed. s/Reese, Pro Se Motion for a Summary Judgment, filed. s/Reese, Pro Se Application to Proceed without Payment of Fees, Affidavit, filed. s/Reese, Pro Se |
| 6/18/14 | ORDER, Murphy, J. (6/17/14) (re: Application to Proceed without Payment of Fees) The application is DENIED. Inadequate information provided re: income and available monies on account. If the application seeks a waiver by Plaintiff of the filing fee for motions and Plaintiff fails to pay the filing fee within 14 days of this Order, the motions will be dismissed. Copy to Petitioner and AAG Fortin |
| 7/14/14 | ORDER, Murphy, J. (7/11/14) (Discovery Before Action Request filed 5/1/14) DENIED. Copy to Petitioner and AAG Fortin |
| 7/14/14 | ORDER, Murphy, J. (7/1114) (Amended Motion to File Discovery filed 5/1/14) DENIED. Copy to Petitioner and AAG Fortin |
| 7/14/14 | ORDER, Murphy, J. (7/11/14) No filing fee has been paid. Motion for Summary Judgment is DENIED. Copy to Petitioner and AAG Fortin |
| 7/14/14 | ORDER, Murphy, J. (7/11/14) (Motion to Reconsider filed 6/11/14)) DENIED. Copy to Petitioner and AAG Fortin |
| 7/14/14 | ORDER, Murphy, J. (7/11/14) (Motion for Summary Judgment filed 6/11/14) DENIED. See Order of same date regarding failure to pay fee. Copy to Petitioner and AAG Fortin |
| 7/14/14 | Under advisement on briefs. |
| 7/30/14 | ORDER, Murphy, J. As the parties have briefed the merits in this matter, the case shall be taken under advisement by the Court, which will issue a written decision without oral argument. Copy to Petitioner and AAG Fortin |

8/14/14    Motion for Reconsideration of Order (on 7/30/14) to Forgo Oral Argument, filed 8/13/14. s/Reese, Pro Se

10/16/14   Letter inquiring about the status of ruling, filed 10/6/14.  s/Reese, Pro Se

10/16/14   Letter sent to Petitioner indicating matter is currently under advisement.

10/31/14   Order on Petitioner's 80C Appeal, Murphy, J.  (10/30/14)
           Petitioner's M.R. Civ. P. 80C appeal is DENIED.
           Copy to Petitioner and AAG Fortin
           Copy to Repositories

10/31/14   Notice of removal of Record sent to AAG Fortin