MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:     2013 ME 34
Docket:       Pen-12-191
Argued:       February 13, 2013
Decided:      March 21, 2013

Panel:        SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

## CHRISTOPHER J. RODERICK

v.

## STATE OF MAINE

MEAD, J.

[¶1]   Christopher J. Roderick appeals from a judgment entered by the Superior Court in three consolidated cases (Penobscot, Hancock, and Waldo Counties, *Hjelm, J.*) denying his petitions seeking post-conviction relief in the form of additional "good time" credits against his sentence.  Roderick primarily contends that the Department of Corrections (DOC) incorrectly construed 17-A M.R.S. § 1253(10)(B) (2012), which gives the chief administrative officer of a prison the discretion to deduct up to two days per month from an inmate's sentence for satisfactory performance in "community work, education or rehabilitation programs."   He also contends that DOC's policy implementing section 1253(10)(B) is invalid because it was not promulgated as a rule pursuant to the Maine Administrative Procedure Act (APA), 5 M.R.S. §§ 8001-11008 (2012). We affirm the judgment.

## I. BACKGROUND

[¶2]  In 2007, Roderick pleaded guilty to a total of ten counts of burglary spanning three counties.  He received an aggregate sentence of eight years' incarceration, following which he will begin serving a consecutive federal sentence.  Because of the pending federal sentence, Roderick is classified as a medium security inmate by DOC.  During his incarceration, he has generally received seven days of good time credit per month: four for good conduct pursuant to 17-A M.R.S. § 1253(9)(A) (2012), and three for participation in "work, education or rehabilitation programs" within the prison pursuant to 17-A M.R.S. § 1253(10)(A) (2012).[1]

[¶3]  In August 2009, Roderick filed a petition for post-conviction review. After the petition was amended by counsel, the State moved to dismiss it, in part on the ground that Roderick had not exhausted his administrative remedies as required by 15 M.R.S. § 2126 (2012).  Roderick filed a second and a third amended petition raising additional grounds; the issues were then narrowed to the good time issue presented in this appeal.  The Superior Court denied the State's motion to dismiss and continued the evidentiary hearing to allow Roderick to pursue a grievance through the DOC process.

---

[1]  The parties stipulated that Roderick is subject to the provisions of section 1253 applicable to crimes committed after August 1, 2004.

[¶4]  In June 2011, Roderick filed a grievance with DOC contending that he should have been receiving two days of good time per month pursuant to section 17-A M.R.S. § 1253(10)(B), which provides in part:

> In addition to the days of deduction provided for in paragraph A [allowing up to three days of good time per month for "work, education or rehabilitation programs"], for any person who commits a crime . . . on or after August 1, 2004 and is subsequently sentenced to a term of imprisonment for that crime to a state facility, up to 2 days per calendar month may also be deducted from that term, calculated from the date of commencement of that term as specified under subsection 1, if that person's fulfillment of responsibilities assigned in the person's transition plan for community work, education or rehabilitation programs during that month is such that the deduction is determined to be warranted in the discretion of the chief administrative officer of the state facility.

The DOC grievance review officer responded, "Since you were not in community work, education or rehabilitation . . . you were not eligible for the extra two (2) days of good time."  Roderick unsuccessfully pursued his claim through the three levels of the DOC grievance process.[2]

[¶5]  The court held an evidentiary hearing on Roderick's third amended petition at which Roderick and an assistant attorney general (AAG) representing

---

[2]  In 2012, the Legislature excluded "calculations of good time and meritorious good time credits pursuant to Title 17-A, section 1253, subsections 3, 3-B, 4, 5 and 7 or similar deductions under Title 17-A, section 1253, subsections 8, 9 and 10" from the definition of a "post-sentencing proceeding" cognizable on post-conviction review.  P.L. 2011, ch. 601, § 3 (effective Aug. 30, 2012) (codified at 15 M.R.S. § 2121(2) (2012)).  Accordingly, inmates who wish to pursue good time challenges must now do so through review in the Superior Court pursuant to M.R. Civ. P. 80C after exhausting the DOC grievance process; they may not do so through a petition for post-conviction review.  *See Raynes v. Dep't of Corr.*, 2010 ME 100, ¶¶ 7, 11, 5 A.3d 1038.  In Roderick's case, the post-conviction hearing was completed and the Superior Court issued its judgment before the amendment to section 2121 became effective.

DOC testified. Roderick offered exhibits and gave testimony establishing that, in addition to holding various prison jobs, he had participated in a variety of programs while incarcerated, including programs concerning substance abuse, career advancement, parenting, workplace safety, and music; he also took college courses offered through the University of Maine at Augusta. Roderick argued to the court, as he does here, that the word "community" in section 1253(10)(B) modifies "work" but not "education" or "rehabilitation," and therefore he should receive credit for education or rehabilitation programs that he completed, whether or not they were community based.

[¶6] The AAG testified that DOC interprets section 1253(10)(B) to require that "there be a community connection to the program" in order to qualify for the two days of good time under that section; that is, DOC construes the word "community" as modifying each of the words "work," "education," and "rehabilitation." In accordance with that interpretation, by written DOC policy, an inmate can get the two days' credit in one of three ways: (1) working outside of the prison in the community; (2) participating in "a comprehensive, dedicated community transition program . . . during the last year of the prisoner's institutional confinement"; or (3) participating in an "evidence-based community risk reduction program . . . during the last year of the prisoner's institutional

confinement." Per the policy, those are the only three ways to earn credit under section 1253(10)(B).

[¶7] The AAG explained that part of the rationale for the policy is grounded in evidentiary studies showing that programs do not significantly reduce community risk unless they are completed near the end of a prisoner's incarceration. She said that Roderick was ineligible to earn section 1253(10)(B) credit because (1) he was classified as a medium custody inmate due to the federal detainer, making him ineligible to work outside of the prison in the community; and (2) he was not in the last year of his sentence,[3] nor would he ever be while in DOC custody due to the pending consecutive federal sentence.

[¶8] The court found that the DOC policy was consistent with section 1253(10)(B) and denied Roderick's petition. We granted Roderick's request for a certificate of probable cause.

## II. DISCUSSION

A. The Maine Administrative Procedure Act

[¶9] Roderick contends that "DOC's good time policy is void and unenforceable because it was not adopted in accordance with the [APA]." An agency must comply with the APA before it adopts a rule; otherwise the rule has

---

[3] At oral argument, the State reported that the policy has been changed to allow for completion of community-based programs in the final eighteen months of an inmate's sentence. The change does not affect our analysis.

no legal effect. *Mitchell v. Me. Harness Racing Comm'n*, 662 A.2d 924, 926 (Me. 1995); 5 M.R.S. § 8057(1). An agency is, however, allowed to "provide guidance for its employees and the public without adopting the guiding materials as rules, as long as those materials are not intended to have, and are not given, the force and effect of law." *Downeast Energy Corp. v. Fund Ins. Review Bd.*, 2000 ME 151, ¶ 23, 756 A.2d 948. Furthermore, an agency is "not required to promulgate rules defining every statutory term that might be called into question." *Cobb v. Bd. of Counseling Prof'ls Licensure*, 2006 ME 48, ¶ 24, 896 A.2d 271.

> [¶10] The APA defines a "rule" as

> the whole or any part of every regulation, standard, code, statement of policy, or other agency guideline or statement of general applicability . . . that is or is intended to be judicially enforceable and implements, interprets or makes specific the law administered by the agency, or describes the procedures or practices of the agency.

> . . . .

> A rule is not judicially enforceable unless it is adopted in a manner consistent with [the APA].

5 M.R.S. § 8002(9), (9)(A). A "rule" does not include:

> [p]olicies or memoranda concerning only the internal management of an agency or the State Government and not judicially enforceable; [or]

> . . . .

> [a]ny form, instruction or explanatory statement of policy that in itself is not judicially enforceable, and that is intended solely as advice to assist persons in determining, exercising or complying with their legal

rights, duties or privileges.

*Id.* § 8002(9)(B).

[¶11] The term "judicially enforceable" is not defined in the APA. Relying on the plain meaning of the term, however, *see Fuhrmann v. Staples the Office Superstore E., Inc.*, 2012 ME 135, ¶ 23, 58 A.3d 1083 ("We interpret the language of a statute de novo by first examining its plain meaning."), we conclude that the DOC policy is not intended to be judicially enforceable because the Department would never have occasion to ask a court to order anyone to comply with it.[4] Rather, the policy is an "instruction or explanatory statement of policy that in itself is not judicially enforceable, and that is intended solely as advice to assist [DOC staff] in determining, exercising or complying with their legal . . . dut[y]" to administer the good time provision created by section 1253(10)(B). 5 M.R.S. § 8002(9)(B). Because the policy is not, and is not intended to be, judicially enforceable, it does not require promulgation as a rule. *See Downeast Energy Corp.*, 2000 ME 151, ¶ 23, 756 A.2d 948.

---

[4] Roderick's argument presupposes that DOC sought to have the Superior Court judicially enforce the policy in his case; however, the court's judgment was limited to a finding that "DOC's implementation of the 2-day monthly deduction for community-based programs, as set out in [Title 17-A] section 1253(10)(B), is consistent with the terms of that statute." The court's role was to determine whether the policy is lawful, not to enforce it.

8

B.    DOC's Interpretation of Section 1253(10)(B)

[¶12]  We next look to see whether, as the Superior Court found, the policy comports with section 1253(10)(B).  Our analysis begins with a determination of whether the statute is ambiguous.  *See Cobb*, 2006 ME 48, ¶ 13, 896 A.2d 271 ("When a case concerns the interpretation of a statute that an administrative agency administers and that is within its area of expertise, our scope of review is to determine first whether the statute is ambiguous.")  Ambiguity exists when a statute "is reasonably susceptible to different interpretations."  *Fuhrmann*, 2012 ME 135, ¶ 23, 58 A.3d 1083 (quotation marks omitted).  If the statute is not ambiguous, we do not defer to DOC's construction but rather "interpret the statute according to its plain language."  *Cobb*, 2006 ME 48, ¶ 13, 896 A.2d 271.  Here, we conclude that section 1253(10)(B) is not ambiguous considering its plain language and the statutory scheme of which it forms a part.  *See Fuhrmann*, 2012 ME 135, ¶ 23, 58 A.3d 1083.

[¶13]  Section 1253 sets out three categories of good time credit that Roderick could potentially earn each month.  The first category allows up to four days for good conduct.  17-A M.R.S. § 1253(9)(A).  The second allows "up to 3 days . . . [for] fulfillment of responsibilities assigned in the person's transition plan for work, education or rehabilitation programs during that month."  *Id.* § 1253(10)(A).  The category at issue here, set out in section 1253(10)(B), allows

"[i]n addition to the days of deduction provided for in [section 1253(10)(A)] . . . up to 2 days per calendar month . . . [for] fulfillment of responsibilities assigned in the person's transition plan for community work, education or rehabilitation programs during that month."

[¶14]  The only significant difference between sections 1253(10)(A) and 1253(10)(B) for our purposes is the word "community."  Roderick argues that the word "community" only modifies "work," and so an inmate can receive three days of good time credit for prison-based "education or rehabilitation programs" under section 1253(10)(A), or two days for the same programs under section 1253(10)(B) if, as in his case, he had already received the maximum three days' credit under section 1253(10)(A) for working in the prison.  Had he not worked in the prison at all, Roderick argues, then he would have been entitled to three days of credit for his prison-based "education or rehabilitation programs" under section 1253(10)(A), and section 1253(10)(B) would not be implicated.

[¶15]  We reject Roderick's strained construction of the statutory scheme. In section 1253(10)(A), the Legislature established a maximum of "*up to* 3 days per calendar month" of good time credit for an inmate's combined participation in prison-based "work, education or rehabilitation programs."  17-A M.R.S. § 1253(10)(A) (emphasis added).  It would be illogical for the Legislature to then allow for more than three days of combined credit (up to a total of five days) in the

following paragraph for participation in the same programs. Section 1253(10)(B) makes the flaw in Roderick's argument clear when it begins by distinguishing section 1253(10)(A) credits from section 1253(10)(B) credits: "*In addition to* the days of deduction provided for in paragraph A . . . ." (Emphasis added.)

[¶16]  Accordingly, we conclude that the word "community" in section 1253(10)(B) modifies each of the three alternatives that immediately follow it— "work, education or rehabilitation programs." Our reading eliminates the illogical duplication between sections 1253(10)(A) and 1253(10)(B) urged by Roderick and yields the result reached by the Superior Court—an inmate may receive up to three days of good time credit for prison-based work, education or rehabilitation programs, and up to two additional days of credit for work, education or rehabilitation programs that are community based, as described by DOC's policy.

[¶17]  Roderick further argues that DOC cannot restrict participation in community-based programs to the last year of confinement because section 1253(10)(B) provides that the two-day deduction is "calculated from the date of commencement" of the sentence. The full clause, however, reads "calculated from the date of commencement of that term as specified under subsection 1 [of section 1253]." 17-A M.R.S. § 1253(10)(B). Subsection one of section 1253 establishes the point at which a DOC sentence begins to run. 17-A M.R.S. § 1253(1) (2012). The plain meaning of the clause is that any good time credit earned under section

1253(10)(B) is applied to the DOC sentence, not to any period of incarceration served before the sentence commences. As the trial court found: "This provision does not require DOC to allow prisoners to earn this deduction for the entire time they are in execution of sentence. Rather, when a prisoner accrues a deduction authorized by section 1253(10)(B), that deduction is calculated in the way prescribed by that statute."

[¶18] Because DOC correctly interpreted section 1253(10)(B) to grant potential good time credit only for participation in work, education or rehabilitation programs that are community based, and because its policy does no more than give effect to that construction, the court did not err in denying Roderick's petition.[5]

The entry is:

Judgment affirmed.

---

[5] To the extent Roderick argues that the policy's restrictions improperly disqualify him from future opportunities to participate in community-based programs, even if the policy did not exist prison officials would still have broad discretion to determine whether he was suitable to participate in them. *See* 34-A M.R.S. § 1402(1) (2012) ("The commissioner has general supervision, management and control of . . . clients of any . . . correctional program."); *Dep't of Corr. v. Pub. Utils. Comm'n*, 2009 ME 40, ¶ 13, 968 A.2d 1047 ("The Legislature granted the Department [of Corrections] broad power and authority to establish policies and procedures to manage the prisons and the persons incarcerated within them.").

**On the briefs:**

Hunter J. Tzovarras, Esq., Bangor, for appellant Christopher J. Roderick

R. Christopher Almy, District Attorney, and Susan J. Pope, Asst. Dist. Atty., Prosecutorial District V, Bangor, for appellee State of Maine

William J. Schneider, Attorney General, and Diane E. Sleek, Asst. Atty. Gen., Augusta, for amicus curiae Department of Corrections

**At oral argument:**

Hunter J. Tzovarras, Esq., for appellant Christopher J. Roderick

Diane E. Sleek, Asst. Atty. Gen., for appellee State of Maine and amicus curiae Department of Corrections

Penobscot County Superior Court docket number CR-2009-834
FOR CLERK REFERENCE ONLY