STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. AP-14-39

MAINE MUNICIPAL ASSOCIATION,
et al.,

STATE OF MAINE
Cumberland ss. Clerk's Office

AUG 1 9 2015

RECEIVED

Plaintiffs

v.                                                                    ORDER

MAINE DEPARTMENT OF HEALTH AND HUMAN
SERVICES, et al.,

Defendants

Before the court is a motion by plaintiffs City of Portland and City of Westbrook seeking the entry of judgment in their favor on counts III and IV of the second amended petition and an amendment of the court's June 9, 2015 order to provide for reimbursement. Defendants oppose the motion, which they characterize as a motion for reconsideration, and simultaneously suggest that injunctive relief should be issued prohibiting Portland and Westbrook from providing benefits to persons who are ineligible for state and local benefits under 8 U.S.C. § 1621(a).[1]

Portland and Westbrook are correct that the court's June 9, 2015 order did not expressly resolve the claims for reimbursement in counts III and IV. However, the court did rule that DHHS has no obligation to reimburse Portland and Westbrook for persons ineligible under 8 U.S.C § 1621(a). June 9, 2015 Order at 18-19.

---

[1] Before issuing this order, the court unsuccessfully attempted to convene a conference with counsel to consider recent legislation affecting eligibility that was enacted after the court's June 9, 2015 order. To avoid further delay, the court will proceed to rule on the pending motion. If any of the parties take issue with the court's understanding of the status and effect of the recent legislation, they should file the appropriate motion under Rule 59(e).

That ruling now needs to be amended to provide that, once a recent amendment to 22 M.R.S. § 4301(3) goes into effect, certain non-citizens who would otherwise have been ineligible under section 1621(a) have been made eligible under 8 U.S.C. § 1621(d). The amendment in question is contained in Laws 2015, ch. 324, which is one of the statutes affected by the Law Court's recent advisory opinion that certain legislation not vetoed within 10 days will become law pursuant to Me. Const., Art IV, pt. 3, § 2. *Opinion of the Justices,* 2015 ME 107.

Chapter 324 is now scheduled to go into effect on October 15, 2015 and provides that effective July 1, 2015 an eligible person for purposes of the General Assistance statute shall include

> in accordance with 8 United States Code, Section 1621(d) . . . a person who is lawfully present in the United States or is pursuing a lawful process to apply for immigration relief except that assistance for such a person may not exceed 24 months.

Laws 2015, Ch. 324, *amending* 22 M.R.S. § 4301(3).

Once it takes effect, chapter 324 will qualify as a state law enacted after the 1996 federal welfare reform statute which "affirmatively provides" for the eligibility of certain non-citizens who would otherwise be ineligible for state and local benefits. *See* 8 U.S.C. § 1621(d). Accordingly, when chapter 324 takes effect, DHHS will be obliged to reimburse municipalities for up to 24 months of General Assistance to all non-citizens who are lawfully present or who are pursuing a lawful process to apply for immigration relief.

In all other respects the motion by Portland and Westbrook is denied. Portland and Westbrook's motion is primarily based on the argument that under the General Assistance statute and regulations DHHS cannot begin withholding reimbursement as a penalty for noncompliance until after municipalities have been notified to file a corrective action plan and that plan has not been accepted or the municipality remains in violation 60 days after the plan has been filed. *See*

22 M.R.S. § 4323(2); 10-344 C.M.R. ch. 323, § XII. In this case DHHS withheld reimbursement without waiting for a corrective action plan.

The corrective action protocol on which Portland and Westbrook rely, however, is applicable when there has been "a violation of this chapter," 22 M.R.S. § 2243(2), referring to chapter 1161 of Title 22. Similarly, under 10-344 C.M.R. ch. 323 § XII reimbursement may be withheld only if "a municipality is not complying with the requirements of the General Assistance statutes, the regulations promulgated thereunder, or the municipality's ordinance."

The court expressly found in its June 9 order that, while Portland and Westbrook may have been violating 8 U.S.C. § 1621(a), they were not violating any provision of the General Assistance statutes or regulations. As a result, DHHS is not entitled to invoke the enforcement and penalty provisions of 22 M.R.S. § 4323(2). June 9, 2015 order at 16-17. It follows that because the enforcement and penalty provisions are inapplicable, Portland and Westbrook are not entitled to require that the corrective action protocol be followed by DHHS before any reimbursement can be withheld.

As the June 9 order makes clear, the court's ruling that DHHS may withhold reimbursement is not based on the General Assistance statute or regulations but on DHHS's separate claim for declaratory relief based on federal law as set forth in count I of defendants' counterclaim. To the extent that Portland and Westbrook have provided General Assistance to non-citizens who are not eligible for benefits under 8 U.S.C. § 1621(a), the court will not require DHHS to provide reimbursement. At the same time, the court agrees with the MMA and the municipal plaintiffs that DHHS has no statutory or inherent authority to enforce 8 U.S.C. § 1621(a) generally and therefore reiterates its ruling that DHHS is not entitled to injunctive or declaratory relief requiring Portland or Westbrook to comply with 8 U.S.C. § 1621(a).

Portland and Westbrook point out that in its June 9 order the court found that the DHHS "Flow Chart" was imperfect and incomplete in some respects and that Portland and Westbrook are nöt required to comply with either the Flow Chart or the June 13, 2014 DHHS "Program Guidance" Memorandum. To the extent that Portland and Westbrook separated their requests for past reimbursement based on the Flow Chart (Stipulated Record ¶¶ 12, 17 and Exhibits G and I) and to the extent that DHHS's reimbursement decisions were based on the Flow Chart (see Stipulated Record Exhibit J), this would not preclude Westbrook and Portland from seeking reimbursement for any General Assistance payments made to persons who were in fact eligible under 8 U.S.C. § 1621 but who were deemed ineligible by DHHS. However, no claim has been made in this action that DHHS in fact denied reimbursement for GA payments made to non-citizens who were incorrectly deemed ineligible.

The entry shall be:

1. In light of subsequent legislation, the court amends paragraph 4 of its June 9, 2015 order as follows:

> On count I of defendants' counterclaim the court finds and declares that DHHS shall not be required to provide reimbursement to Portland or Westbrook for any General Assistance payments that have been made to persons who are ineligible for state and local benefits under 8 U.S.C. § 1621(a) except that, when chapter 324 of the statutes enacted in the most recent legislative session becomes effective, DHHS shall be required to provide reimbursement for General Assistance payments made to otherwise ineligible persons who are made eligible pursuant to 22 M.R.S. § 4301(3), as amended by Laws 2015, ch. 324.

2. Subject to paragraph 1 above, judgment shall be entered for defendants on counts III and IV of the second amended complaint.

3. The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

4

Dated: August 19, 2015

_____
Thomas D. Warren
Justice, Superior Court

Action:  80C Appeal

MAINE MUNICIPAL ASSOCIATION          MAINE DEPT. OF HEALTH AND HUMAN
CITY OF PORTLAND          vs.        SERVICES
CITY OF WESTBROOK                    MARY MAYHEW, COMMISSIONER
REHMA REBECCA JUMA(INTERVENOR)
SUAVIS FURAHA(INTERVENOR)

Plaintiff's Attorney                              Defendant's Attorney

Peter J Detroy, Esq                  Clifford H. Ruprecht, Esq
Russell B Pierce, Esq                66 Pearl Street
James D Poliquin, Esq                Portland, ME 04101
PO Box 4600
Portland, Me 04112

Zachary Heiden, Esq(Intervenors)
121 Middle St., Ste 301
Portland, ME 04101

Jack Comart, Esq(Intervenors)
Robyn Merrill, Esq(Intervenors)
126 Sewall St.
Augusta, ME 04330-6822

STATE OF MAINE  
CUMBERLAND, ss.

SUPERIOR COURT  
CIVIL ACTION  
Docket No. AP-14-39

MAINE MUNICIPAL ASSOCIATION,  
et al.,

      Plaintiffs

v.

MAINE DEPARTMENT OF HEALTH AND HUMAN  
SERVICES, et al.,

      Defendants

ORDER

STATE OF MAINE  
Cumberland, ss, Clerk's Office

JUN 09 2015

RECEIVED

Before the court are cross-motions for judgment upon a stipulated record. The parties have agreed that the stipulated record constitutes both the administrative record on the Rule 80C claims brought by plaintiffs Maine Municipal Association, the City of Portland, and the City of Westbrook (the "Municipal Plaintiffs") and the factual record on all parties' claims for declaratory and injunctive relief. Oral argument was held on May 15, 2015.

This case centers upon a provision of federal law enacted as part of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA), P.L. 104-193, the welfare reform statute enacted during the Clinton Administration. That Act included a number of provisions applicable to persons who are not U.S. citizens, including 8 U.S.C. § 1621. That statute provides that aliens who do not fall within certain specified categories are "not eligible for any State or local public benefits." 8 U.S.C. § 1621(a).

In Count I of their Amended Petition the Municipal Plaintiffs are seeking judicial review under Rule 80C of certain actions by defendants Maine Department of Human Services (DHHS) and Commissioner Mayhew which the Municipal Plaintiffs contend constitute an unauthorized

attempt to enforce 8 U.S.C. § 1621(a) against municipalities providing General Assistance (GA) benefits pursuant to 22 M.R.S. §§ 4301-26. The Municipal Plaintiffs argue that the State cannot proceed without, at a minimum, engaging in rulemaking under the Maine Administrative Procedure Act.

In Count II of the Amended Petition Portland and Westbrook seek declaratory and injunctive relief enjoining the State from any enforcement efforts and preventing the State from denying reimbursement based on 8 U.S.C. § 1621(a).

Intervenor plaintiffs Rehma Rebecca Juma and Suavis Furaha allege that they were born in Burundi but fled due to political persecution and have applied for asylum in the United States. They allege that that the State has promulgated an unauthorized eligibility rule based on 8 U.S.C. § 1621(a) that prevents asylum seekers from receiving General Assistance even though asylum seekers often cannot support themselves because they are required under federal law to wait at least 180 days before they can obtain authorization to work. The Intervenors join Portland and Westbrook in seeking declaratory and injunctive relief prohibiting the State from enforcing the eligibility requirement in question.

Defendants have filed a cross-motion for judgment on the stipulated record, arguing that they were not required to engage in formal rule-making before promulgating statements of policy and revised reporting forms and before withholding reimbursement for General Assistance to persons the State contends are ineligible under 8 U.S.C. § 1621(a). In addition, the defendants seek declaratory and injunctive relief declaring that the State is entitled to withhold reimbursement from Portland and Westbrook if those cities do not apply the eligibility criteria in 8 U.S.C. § 1621(a) and, in the alternative, enjoining Portland and Westbrook from making General Assistance payments in violation of 8 U.S.C. § 1621(a).

2

At the oral argument on May 15, 2015, counsel for defendants stated that in the interest of resolving the underlying issues as quickly as possible, defendants were not asserting any argument that Portland and Westbrook had failed to exhaust administrative remedies.

## 1. 8 U.S.C. § 1621

As noted above, 8 U.S.C. § 1621 provides that aliens who do not fall within certain specified categories are "not eligible for any State or local public benefits." 8 U.S.C. § 1621(a). The statute provides a mechanism by which states can be relieved of this prohibition: a state may provide that aliens otherwise ineligible for state or local public benefits under § 1621(a) may be made eligible through the enactment of a state law after August 22, 1996 "which affirmatively provides for such eligibility." 8 U.S.C. § 1621(d).

The statutory provisions at issue demonstrate some of the complexities of federal immigration law. Under section 1621(a) non-citizens who are not excluded from receiving state and local benefits include (1) "qualified aliens" as defined in 8 U.S.C. § 1641, (2) aliens who are defined as "nonimmigrants" under the Immigration and Nationality Act, and (3) aliens who have been paroled into the United States for less than one year. 8 U.S.C § 1621(a)(1)-(3).

"Qualified alien" is defined in 8 U.S.C. § 1641 to mean:

(1) aliens who have been granted permanent resident alien status,

(2) aliens who have been granted asylum under 8 U.S.C. § 1158,

(3) aliens who have been admitted into the United States as refugees under 8 U.S.C. § 1157,

(4) aliens who have been paroled into the United States for more than one year,

(5) aliens whose deportation is being withheld under 8 U.S.C. § 1231(b)(3) and a predecessor statute,

(6) aliens who have been granted conditional entry pursuant to 8 U.S.C. § 153(a)(7) as in effect prior to April 1, 1980,

(7) aliens who are Cuban or Haitian entrants as defined in section 501(e) of the Refugee Education Assistance Act of 1980,

(8) aliens who themselves or their children have been battered or subjected to extreme cruelty under certain circumstances.

8 U.S.C. §§ 1641(b), (c).

As counsel for the intervenors pointed out at oral argument, the category of permanent resident alien includes alien spouses and children or permanent resident aliens who are entitled to conditional permanent resident alien status under 8 U.S.C. § 1186a. The category of "nonimmigrants" under 8 U.S.C. § 1621(a)(2) includes holders of S, T, and U visas issued to aliens who have assisted law enforcement agencies or who are victims of human trafficking or certain crimes including domestic violence.

Aliens who are excluded from receiving state or local benefits under 8 U.S.C. § 1621(a) are aliens who do not fall into any of the above categories and who entered the U.S. illegally, who have overstayed their visas, or who have applied for asylum and are awaiting a decision on their applications. As far as the court can tell, a significant number of aliens in Maine who would be excluded from receiving any state and local benefits under 8 U.S.C. § 1621(a) fall into the latter category. This is the situation of intervenors Juma and Furaha. Stipulated Record ¶ 21.

4

It bears emphasis that, although these individuals are characterized as aliens who are "not lawfully present" or "illegal" in certain documents in the record,[1] that characterization is not entirely accurate. In its reply memorandum the State argues that applicants for asylum do not have a lawful immigration status – although they will get that status if their applications are approved. But the State agrees that persons who have applied for asylum are at least lawfully present in the U.S. in that they are not subject to deportation or removal so long as their applications for asylum are pending.[2] At least one federal statute states that "no period of time in which an alien has a bona fide application for asylum pending . . . shall be taken into account in determining a period of unlawful presence" unless the alien in question was employed without authorization. 8 U.S.C. § 1182(a)(9)(B)(iii)(II). *See also* 8 C.F.R. § 103.12(a)(5) (applicants for asylum who have been granted employment authorization and applicants for asylum under the age of 14 whose applications have been pending 180 days included as "lawfully present" aliens for purposes of Title II Social Security benefits).

As a result, attempting to characterize whether applicants for asylum are "lawfully present" may constitute a debating point between the parties but is not otherwise helpful. For purposes of this decision, the court will refer only to "eligible" and "non-eligible" aliens under § 1621(a).


2. Maine General Assistance Statute

General Assistance is governed by Chapter 1161 of Title 22. It is designed to offer immediate aid to persons who are unable to provide basic necessities such as food, clothing,

---

[1] *See, e.g.,* Exhibits D and E to the Stipulated Record.

[2] Respondents' Memorandum in Opposition to Petitioners' and Intervenors' Motion for Judgment dated March 27, 2015, at 4-5.

5

shelter, and medical care essential to maintain themselves and their families. *See* 22 M.R.S. §§ 4301(1), (3), (5), (10). Each municipality is required to operate a general assistance program which shall be administered in accordance with a municipal ordinance. 22 M.R.S. § 4305(1). The governing statute requires that eligibility must be based on need. *E.g.,* 22 M.R.S. § 4308(1). With minor exceptions,[3] the responsibility for setting all other eligibility standards is placed on municipalities. 22 M.R.S. § 4305(3):

> Municipalities may establish standards of eligibility, in addition to need, as provided in this chapter. Each ordinance shall establish standards which shall:
> (A) Govern the determination of eligibility of persons applying for relief . . . .

Each municipal ordinance must also provide that relief shall be furnished or denied to all eligible applicants within 24 hours of their application. 22 M.R.S. § 4305(3)(C).

Although General Assistance payments are made by municipalities, DHHS is required to reimburse a municipality for 50% of the general assistance provided up to .0003 of the municipality's most recent state valuation and for 90% of amounts paid in excess of .0003 of the most recent state valuation when the Department finds that the municipality has been "in compliance with all requirements of this chapter." 22 M.R.S. §§ 4311(1), (1-B).

22 M.R.S. § 4323(1) provides that DHHS shall review the administration of general assistance in each municipality. If DHHS finds "any violation of this chapter after review," it shall notify the municipality that it has 30 days to file a plan to correct the violation. 22 M.R.S. § 4323(2). Any municipality which fails to file an acceptable plan or which remains "in violation of this chapter" 60 days after filing its plan is subject to civil penalties and DHHS shall in

---

[3] For example, section 4301(3) provides that fugitives from justice are not eligible for general assistance, and the Commissioner of DHHS is authorized to establish standards of eligibility for general assistance in the unorganized territories. 22 M.R.S. § 4312.

addition "withhold reimbursement to any municipality which is in violation of this chapter" until it achieves compliance. *Id.*

There is no mention in Chapter 1161 of any federal standards governing eligibility. Regulations governing DHHS review, the imposition of penalties, and DHHS reimbursement are contained in 10-144 C.M.R. ch. 323, sections X, XII, and XIII respectively.

### 3. Maine Administrative Procedure Act

As relevant to the instant case, the Maine Administrative Procedure Act mandates a formal rule-making process, with notice to the public and to the legislature and a public comment period, for any "rule," defined as

> The whole or part of every regulation, standard, code, statement of policy, or other agency guideline or statement of general applicability . . . that is or is intended to be judicially enforceable and implements, interprets or makes specific the law administered by the agency, or describes the procedures or practices of the agency.

5 M.R.S. § 8002(9)(A). The statute further provides that a rule "is not judicially enforceable unless it is adopted in a manner consistent with this chapter." 5 M.R.S. § 8002(9).

### 4. DHHS Actions Under Review

In late 2013 and early 2014 DHHS drafted a proposed rule that would have provided that individuals not eligible for federal or state TANF or SNAP benefits would not be eligible for General Assistance. Stipulated Record ¶ 1.[4] That proposed rule was not approved by the Office of Attorney General pursuant to 5 M.R.S. § 8056(1)(A). Stipulated Record ¶¶ 1-2.

---

[4] In its brief DHHS characterizes the proposed rule as extending GA benefits to certain individuals who otherwise would not be eligible under 8 U.S.C. § 1621(a) and denying GA benefits to other individuals made ineligible for benefits under 8 U.S.C. § 1621(a). The full text of the proposed rule is not in the

On June 13, 2014 DHHS issued what it described as a "General Assistance Program Guidance" memorandum. Exhibit D to Stipulated Record. Referencing 8 U.S.C. § 1621, the DHHS memorandum stated that "[t]o be in compliance with Federal law, the State of Maine Department of Human Services will no longer provide reimbursement to a municipality for General Assistance provided to aliens who are not lawfully present in the United States."[5]

The "Program Guidance" memorandum further provides that municipalities should now be asking all clients if they are U.S. citizens and if not, question them on their immigration status. It stated that since non-citizens must provide DHHS with their immigration status in connection with applications for TANF and SNAP benefits, municipal GA administrators "will contact [DHHS] to confirm legal non-citizenship status of GA applicants."

The "Program Guidance" memorandum stated that the DHHS reimbursement form was being revised to ask municipalities to list the number of non-citizens for which GA reimbursement was sought and that DHHS will be conducting periodic audits of municipalities "to review the compliance with this operating memo."

On June 20, 2014 the Governor sent a letter to all municipalities. Exhibit E to Stipulated Record. That letter outlined the Governor's disagreement with the Office of Attorney General and stated that after the Attorney General had declined to approve the proposed regulation, state officials had concluded that "a rulemaking process was not necessary to implement existing

---

record. As far as the court can tell from the record, any proposed extension of eligibility for GA benefits would have been by implication. The language of the proposed rule contained in the record (Stipulated Record ¶ 1) refers only to making certain persons ineligible.

[5] In using of the term "no longer," DHHS appears to acknowledge that it had not previously declined to reimburse municipalities for General Assistance payments to persons who would not have been eligible for such assistance pursuant to 8 U.S.C. § 1621(a). Moreover, it has declined reimbursement for payments to aliens that DHHS deems to be ineligible only since the date of the Guidance Memorandum.

8

federal law." The letter stated that the Governor expected the head of each municipality to certify in writing compliance with federal law and concluded:

> If DHHS finds that a municipality fails to comply with the law, it will cut off all General Assistance reimbursement to that community.

DHHS thereafter sent municipalities a document that is referred to as the "Flow Chart." Exhibit F to Stipulated Record). The Flow Chart begins with the sentence, "An alien lawfully admitted . . . must submit supporting documentation to establish lawful presence under one of the following categories." The Flow Chart then lists the documentation which, according to DHHS, would demonstrate eligibility under 8 U.S.C. §§ 1621(a)(1)-(3) and 1641(b) and (c).

The Flow Chart further exemplifies the complexity of federal immigration law. Moreover, as the Intervenors pointed out at oral argument, the Flow Chart has a number of flaws. It uses incorrect nomenclature and, perhaps more importantly, omits certain documents that would also establish eligibility.[6] In addition, for one category – aliens who are eligible under the provision for persons who have been battered or subjected to extreme cruelty under certain circumstances, 8 U.S.C. § 1641(c) – Intervenors contend that the Flow Chart's reference to "INS petition and supporting documentation" is extremely unhelpful because the petition and supporting documentation often consists of hundreds of pages, many of which are confidential.[7]

In October 2014 Portland and Westbrook submitted claims for GA reimbursement for time periods beginning with the second half of June 2014. Stipulated Record ¶¶ 12, 16. In both cases the DHHS reimbursement request form required the municipal administrator to certify that the city was not seeking reimbursement for non-citizens who were not qualified for General

---

[6] These include orders from immigration judges and the Board of Immigration Appeals, approvals of petitions to establish conditional permanent residency of family members, and "S", "T", and "U" visas.

[7] The category on the Flow Chart for "battered aliens" also contains a reference to "preceding lists (A & B)" which nowhere appear on the document. *See* Ex. F to Stipulated Record at 2.

9

Assistance under 8 U.S.C. § 1621(a). *See, e.g.,* page 1 of Exhibit G to Stipulated Record; page 1 of Exhibit I to Stipulated Record.

Westbrook submitted reimbursement claims for non-citizens only with respect to persons who appeared to be eligible utilizing the DHHS Flow Chart. Exhibit G to Stipulated Record, pp. 2, 5. Westbrook's submission stated that it could not discern with certainty whether persons subject to the guidance that had been received from DHHS were in fact disqualified from benefits under 8 U.S.C. § 1621. Westbrook reserved the right to seek reimbursement for GA payments it had made to persons deemed ineligible by DHHS if its challenge to the legality of the DHHS Guidance Memorandum was sustained or if any persons had been incorrectly disqualified for benefits under the Flow Chart. *Id.*

DHHS found that Westbrook's claims for reimbursement were in compliance and paid all the claims that Westbrook had submitted for reimbursement. Stipulated Record ¶¶ 14-15.

Portland segregated its claims for reimbursement and submitted two sets of reimbursement forms, one for persons who appeared to be eligible for benefits utilizing the DHHS Flow Chart and one for persons who did not appear to be eligible under the DHHS interpretation. Stipulated Record ¶ 17; Stipulated Record Ex. I.[8] Like Westbrook, Portland also stated that it could not discern with certainty whether persons deemed ineligible by DHHS were in fact disqualified under 8 U.S.C. § 1621. Ex. I, pp. 2, 4.

In a January 2015 review of Portland's claims for reimbursement, a DHHS Field Examiner made findings that Portland was out of compliance with the General Assistance statute and regulations in five respects. Ex. J to Stipulated Record. Four of the alleged violations are not before the court in this action.

---

[8] On the forms seeking reimbursement for persons who did not appear eligible under the DHHS interpretation, Portland did not sign the certification as to eligibility. Ex. I to Stipulated Record, pp. 5-6.

As pertinent to this action, the Field Examiner made a finding that, with respect to the second set of claims submitted by Portland, Portland was in violation with statutory and regulatory requirements because it had paid General Assistance benefits to persons whom DHHS considered to be ineligible under 8 U.S.C. § 1621 and had further requested reimbursement for those individuals. Ex. J to Stipulated Record at 1, 3, 14. DHHS therefore denied reimbursement for those persons. Stipulated Record ¶ 20. However, the Field Examiner stated that DHHS's audit found that Portland had correctly segregated individuals who were eligible for reimbursement under the DHHS interpretation, and DHHS has reimbursed Portland for those individuals. Ex. J to Stipulated Record at 14; Stipulated Record ¶ 20.[9]

The Field Examiner's report listed a number of remedial steps that DHHS "requires . . . to bring the City of Portland into compliance with the General Assistance statute and regulations." Ex. J to Stipulated Record at 14. Among those was a requirement to pay General Assistance only to eligible applicants under 8 U.S.C. § 1621 and not to seek reimbursement for such individuals. Ex. J at 16.

The Field Examiner's report gave Portland 10 days to respond to the DHHS findings and, if Portland continued to be out of compliance, stated that Portland would have 30 days to submit a written plan of correction. Ex. J at 16. The Field Examiner's Report stated that pending the resolution of this lawsuit, DHHS would not assess any civil penalties or withhold reimbursement more broadly with respect to the payment of GA benefits to persons DHHS considered to be ineligible under 8 U.S.C. § 1621(a). However, it stated that if the lawsuit was resolved in DHHS's favor and Portland's non-compliance continued, "DHHS reserves the right to impose civil penalties or withhold all [GA] reimbursement." Ex. J at 17.

---

[9] This had not occurred at the time the parties submitted their briefs but the court was advised at oral argument that it had occurred as of May 15, 2015.

11

5. Whether Maine Has Enacted Law "Affirmatively Providing" for Eligibility

A threshold issue is whether, since the 1996 enactment of PRWORA, Maine has enacted legislation that qualifies, for purposes of 8 U.S.C. § 1621(d), as furnishing eligibility to aliens who would otherwise be ineligible under § 1621(a). If so, Portland and Westbrook would not potentially be in violation of any federal statute by providing benefits to persons such as the Intervenors.

On this issue the Municipal Plaintiffs and the Intervenors rely on the continued appropriation of funds for the General Assistance program since 1996, which they argue constitutes full funding of eligibility decisions made by municipalities, including payments made without regard to 8 U.S.C. § 1621(a). They also point to legislative history relating to the biennial budget enacted in 2013 by the 126th Legislature, in which various changes were made to the General Assistance Program based in part on recommendations by a General Assistance Working Group established by the 125th Legislature.[10]

The January 29, 2013 Report of the General Assistance Working Group, which was chaired by defendant Mayhew, demonstrates that DHHS was fully aware that General Assistance was being provided to asylum seekers.[11] Moreover, the January 29, 2013 Report was sent to the Legislature with a cover letter from Commissioner Mayhew, demonstrating – if there was any

---

[10] Laws 2011, ch. 655, § R-4.

[11] The General Assistance Working Group Report, sent to the Legislature with a cover letter signed by Commissioner Mayhew, may be found at http://www.maine.gov/dhhs/reports/general-assistance-work-group-report.pdf. One of its recommendations was "to streamline the asylum seekers application process." Another recommendation was to modify the TANF and SNAP hardship criteria for asylum seekers and lawful permanent residents in order to reduce the burden on General Assistance. A third recommendation to reduce the burden on GA assistance was to restore certain budget cuts for "asylum seekers, lawful permanent residents, and other lawful immigrants." Report at 10-11. The Working Group Report also notes that the problem of asylum seekers is particularly acute because, while asylum applications are required to be adjudicated within 180 days, "in reality it often takes several years to obtain a final decision."

12

doubt – that the Legislature was also made aware that General Assistance was being provided to asylum seekers. During the budget debate the Senate Chair of the Appropriations Committee expressly thanked the General Assistance Working Group and noted that the Appropriations Committee had adopted a number of its recommendations. *See* Legislative Record – Senate, 126th Legislature, 1st Session, June 13, 2013 (remarks of Sen. Cain). In her floor remarks Senator Cain stated that that the budget bill had eliminated General Assistance for those who should not be receiving it while at the same time protecting those most vulnerable including "people fleeing unsafe conditions in their country of origin." *Id.*

However, under 8 U.S.C. § 1621(d), a State can overcome the prohibition on eligibility set forth in § 1621(a) "only through the enactment of a State law after the date of the enactment of this Act [August 22, 1996] which affirmatively provides for such eligibility." The court is constrained to conclude that, notwithstanding prior legislative and DHHS acquiescence and notwithstanding the legislative history cited above, section 1621(d) requires statutory language conveying a positive expression of legislative intent to extend GA benefits to aliens who would otherwise be ineligible under § 1621(a). *See Martinez v. Regents of the University of California,* 241 P.3d 855, 868 (Cal. 2010); *Kaider v. Hamos,* 975 N.E. 2d 667, 674 (Ill. App. 2012).[12]

As defendants point out, the Maine Legislature enacted such language in connection with food assistance and in connection with TANF and Medicaid. Laws 1997, ch. 731, § 1, enacting 22 M.R.S § 3104-A(4) (since repealed); Laws 1997 ch. 530 § A-16, enacting 22 M.R.S. §

---

[12] The court agrees with the California Supreme Court in *Martinez* and the Illinois Appeals Court in *Kaider v. Hamos* that § 1621(d) does not require an express reference to 8 U.S.C. § 1621(a) or an express reference to "ineligible aliens," "illegal aliens," or "aliens not lawfully present." *See* 241 P.3d at 867; 975 N.E. 2d at 673. What is required and what is missing here is language in a legislative enactment expressing an intent to extend GA benefits to a category of non-citizens that would include asylum seekers, such as the legislative language that was found to be sufficient in *Martinez,* 241 P.3d at 366 (statutory reference to "persons without lawful immigration status") and *Kaider,* 975 N.E. 2d at 675-66 (statute expressly referring to "non-citizens").

13

3762(3)(B)(2). Both of those statutes expressly extended benefits to households or non-citizens who "would be eligible . . . but for [PRWORA]." No comparable language has been enacted with respect to General Assistance.

As a result, although the Municipal Plaintiffs and Intervenors are correct that DHHS's current reliance on 8 U.S.C. § 1621(a) represents a change in DHHS policy, one that is not called for by any enactment of the Maine Legislature, and one that is in fact inconsistent with the prior funding decisions by the Maine Legislature, the court does not find that Maine has enacted any legislation that has affirmatively provided for General Assistance eligibility of otherwise ineligible non-citizens under section 1621(d).

The Municipal Plaintiffs and Intervenors also note that the federal government has never sought to enforce § 1621(a) against Maine. However, there is no provision in federal law for enforcement of § 1621(a) in cases where no federal funding is provided. As a result, federal silence does not constitute federal agreement that Maine has removed itself from the prohibition in § 1621(a). Nor does the court perceive any Tenth Amendment problem given the federal government's constitutional authority over immigration policy. U.S. Const. Art I, § 8, cl. 4. *See* *Plyler v. Doe*, 457 U.S. 202, 225 (1982).

6. Rulemaking and Statutory Authority

DHHS argues that it did not have to engage in formal rulemaking because its June 2014 "Program Guidance" memorandum comes within the statutory exception to rulemaking for "an explanatory statement of policy     that is itself not judicially enforceable, and that is intended solely as advice to assist persons in determining, exercising, or complying with their legal rights, duties, or privileges." *See* 5 M.R.S. § 8002(9)(B)(4).

14

The problem with this argument is that the DHHS "Program Guidance" memorandum does not simply advise municipalities of DHHS's interpretation of 8 U.S.C. § 1621(a) and its intent not to provide GA reimbursement for aliens DHHS deems ineligible. Instead, it directs municipalities to make inquiries as to the citizenship status of all applicants and the immigration status of all non-citizens. The "Program Guidance" memorandum further states that DHHS will be conducting audits "to review compliance with this operating memo" (emphasis added).

As promised in the "Program Guidance" memorandum, DHHS then amended its reimbursement form to · require municipalities to certify that they were not seeking reimbursement for aliens not eligible under 8 U.S.C. § 1621. The DHHS Flow Chart instructs municipalities to require that non-citizen GA applicants submit specified "supporting documentation" establishing their immigration status. Finally, both the Governor's letter and the Field Examiner's Report provided to Portland, Stipulated Record Exs. E and J, demonstrate that depending on the outcome of this lawsuit, DHHS intends to withhold all General Assistance reimbursement to any municipality that does not comply with DHHS's directives with respect to non-citizens.

DHHS's "Program Guidance" memorandum and the other directives it has issued in furtherance of that memorandum are part of an undisguised effort to enforce the federal PRWORA eligibility statute. Together they constitute "a statement of policy or other agency guideline . . . that is or is intended to be judicially enforceable and implements, interprets or makes specific the law administered by the agency or describes the procedure or practices of the agency." 5 M.R.S. § 8002(9)(A). The "Program Guidance" memorandum and the other DHHS directives therefore constitute a "rule" for which rule-making was required.

15

DHHS relies on the Law Court's decision in *Roderick v. State,* 2013 ME 34, 79 A.3d 368, in arguing that its "Program Guidance" memorandum and its other directives are explanatory statements of policy that are not intended to be judicially enforceable. In *Roderick,* the Law Court ruled that a statement of policy is not intended to be judicially enforceable "because the Department would never have occasion to ask a court to order anyone to comply with it." 2013 ME 14 ¶ 11. However, as the Municipal Plaintiffs and Intervenors point out, DHHS is seeking judicial enforcement of its "Program Guidance" memorandum in this action. In addition, DHHS is requiring municipalities to comply with various directives – to inquire as to citizenship and immigration status, to require non-citizens to submit specified immigration documentation, to ascertain the correct immigration status of non-citizens,[13] and to certify that non-citizen GA recipients are eligible under 8 U.S.C.§ 1621(a).

DHHS is also proposing to enforce compliance with its directives by potentially employing the sanctions of civil penalties and withholding all GA reimbursement under 22 M.R.S. 4323(2). Unlike the Department of Corrections in *Roderick,* DHHS is not merely issuing a policy setting forth its interpretation of a statute. Instead, it is mandating compliance with PRWORA and threatening to punish non-compliance with penalties. Accordingly, DHHS cannot undertake enforcement action unless it undertakes rulemaking pursuant to 5 M.R.S. §§ 8051-74.

Further support for this conclusion is found in 5 M.R.S. § 8074, which contemplates that rulemaking shall be undertaken with respect to "substantive rules that are required by federal

---

[13] In many cases this will not be an easy task given the complexity of federal immigration law, the imperfect and incomplete guidance given by DHHS in its Flow Chart, and the 24-hour rule.

law." Finally, the fact that DHHS originally sought to proceed by rulemaking is a telling acknowledgment that rulemaking is required.[14]

DHHS's attempt to enforce compliance with 8 U.S.C. § 1621(a) is flawed for a second reason. Its authority to invoke any of the compliance enforcement and penalty provisions is limited to municipalities which are "in violation of this chapter." 22 M.R.S. § 4323(2). There is nothing in Chapter 1161 of Title 22 which conditions eligibility for General Assistance upon immigration status or that incorporates any federal eligibility standard. As a result, municipalities which provide General Assistance to asylum seekers may be violating 8 U.S.C. § 1621(a), but they are not violating Maine's General Assistance statute. DHHS cannot invoke the enforcement and penalty provisions of 22 M.R.S. § 4323(2) because it lacks both the regulatory authority and the statutory authority to do so.

This problem is not limited to the imposition of penalties or the threat to withhold all reimbursement. All of DHHS's statutory and regulatory authority with respect to General Assistance is derived from chapter 1161 of Title 22. *See, e.g.,* 22 M.R.S. § 4311(1) and (1-B) (providing for state reimbursement "if the department finds that the municipality has been in compliance with all requirements of this chapter"); 22 M.R.S. § 4323(1) (DHHS shall review the administration of general assistance in each municipality "for compliance with this chapter"). While the issue of pre-emption is discussed below, defendants have cited no authority – and the court is aware of none – for the proposition that actions that contravene federal law automatically

---

[14] DHHS's initial attempt to proceed through rulemaking failed because its proposed rule was not approved by the Office of Attorney General as required by 5 M.R.S. § 8056(1)(A). However, DHHS has not argued that this excuses its failure to proceed through rulemaking. At an initial hearing in this case, counsel for defendants stated that defendants were not making any legal challenge to the statutory requirement of submission of proposed rules to the Attorney General. In this connection, the Executive Branch is not necessarily left without any avenue of relief if it believes that the Attorney General has wrongly failed to approve a necessary rule. The court sees no reason why a state agency could not seek Rule 80C review from a decision of the Office of Attorney General that a proposed rule should not be approved. *See* Opinion of the Justices, 2015 ME 27.

violate state law as well or that all federal laws are implicitly and automatically incorporated into state law. As a result, DHHS has no statutory authority to require compliance with 8 U.S.C. § 1621(a).

7. Preemption

The foregoing discussion does not fully resolve this case because DHHS is alternatively seeking declaratory and injunctive relief to avoid a situation where it is required to reimburse municipalities for General Assistance payments that are in violation of PRWORA. Moreover, the court is not prepared to issue a ruling that has the effect of ignoring the dictates of federal law. Regardless of any opinion that the court may have as to the wisdom of the federal law at issue, the court is bound to apply federal law under the Supremacy Clause of the U.S. Constitution, U.S. Const. Art VI, cl. 2, and municipalities are bound to follow federal law as well.

That leaves the court with what might appear to be an irreconcilable conflict between a state agency that has failed to adopt a rule as required by law and whose actions are in excess of statutory authority, 5 M.R.S. §§ 8058(1), 11007(4)(C)(2), and municipalities which are not adhering to a federal statute relating to the eligibility of certain non-citizens for state and local benefits. However, this conflict can be reconciled on the basis of standing. For the reasons stated above, DHHS does not have standing or statutory authority to enforce 8 U.S.C. § 1621(a) or to require compliance with that statute. However, DHHS would be subjected to injury in fact[15] if it were required to provide reimbursement for any General Assistance payments that have been made to persons who are ineligible for state and local benefits under federal law. DHHS

---

[15] *See Fitzgerald v. Baxter State Park Authority*, 385 A.2d 189, 196 (Me. 1978).

18

therefore has standing to obtain an order relieving it of any obligation to provide GA reimbursement to Portland or Westbrook for persons ineligible under 8 U.S.C. § 1621(a).[16]

8. Relief

While all parties have sought injunctive relief, the proceedings before the court have not demonstrated any unwillingness on the part of any party to accept a judicial determination in the form of declaratory relief. *See Littlefield v. Town of Lyman,* 447 A.2d 1231, 1235 (Me. 1982). *See also* 14 M.R.S. § 5960 (if necessary, further relief may be granted to supplement declaratory relief).

Accordingly, the court will deny all parties injunctive relief and award only declaratory relief.

The entry shall be:

1. On Count I of the second amended petition, the court finds pursuant to Rule 80C and 5 M.R.S. § 8058(1) that defendant DHHS lacks authority to require compliance with 8 U.S.C. § 1621(a) or to impose any penalties for non-compliance until it engages in rulemaking.

2. On Count I of the second amended petition, the court finds in the alternative pursuant to Rule 80C and 5 M.R.S. § 11007(4)(C)(2) that the actions of defendant DHHS to enforce 8 U.S.C. § 1621(a) are in excess of statutory authority.

3. On Count II of the second amended petition, the court finds and declares that plaintiffs City of Portland and City of Westbrook are not required to comply with the "Program Guidance" Memorandum, the Flow Chart, and the certification requirements as to non-citizens in the revised reimbursement form and that DHHS has no statutory or regulatory authority to penalize

---

[16] According to the "Program Guidance" memorandum attached as Exhibit D to the Stipulated Record, DHHS requires all GA recipients to also apply for food supplement, TANF, and/or MaineCare assistance and requires the submission of immigration status documents as part of those applications. While there may be individual cases where immigration status is difficult to discern, DHHS appears to have the necessary information to consider immigration status in connection with GA reimbursement. Both municipalities and DHHS retain all administrative and judicial remedies in the event of disputes as to the eligibility of specific individuals or categories of individuals.

19

municipalities for non-compliance with DHHS instructions or directives relating to persons who DHHS deems to be ineligible for General Assistance pursuant to 8 U.S.C. § 1621(a).

4. On Count I of defendants' counterclaim, the court finds and declares that DHHS shall not be required to provide reimbursement to Portland or Westbrook for any General Assistance payments that have been made to persons who are ineligible for state and local benefits under 8 U.S.C. § 1621(a).

5. As noted above, the court declines at this time to enter any injunctive relief and therefore denies the request for injunctive relief in count II of the second amended petition and dismisses Count II of defendants' counterclaim.

6. The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: June 9, 2015

Thomas D. Warren
Justice, Superior Court

20

CLERK OF COURTS
Cumberland County
205 Newbury Street, Ground Floor
Portland, ME 04101

ZACHARY HEIDEN ESQ
121 MIDDLE STREET SUITE 301
PORTLAND ME 04101

Counsel for Intervenors

---

CLERK OF COURTS
Cumberland County
205 Newbury Street, Ground Floor
Portland, ME 04101

RUSSELL PIERCE ESQ
NORMAN HANSON & DETROY
PO BOX 4600
PORTLAND ME 04112-4600

Counsel for MMA, City of
Portland / Westbrook.

CLERK OF COURTS
Cumberland County
205 Newbury Street, Ground Floor
Portland, ME 04101

JACK COMART ESQ
126 SEWALL STREET
AUGUSTA ME 04330-6822

Counsel for Intervenors

---

CLERK OF COURTS
Cumberland County
205 Newbury Street, Ground Floor
Portland, ME 04101

CLIFFORD RUPRECHT ESQ
66 PEARL STREET
PORTLAND ME 04101

Counsel for Maine DHHS

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. AP-14-39
TDW-CUM-12-22-14

MAINE MUNICIPAL ASSOCIATION,
et al,

       Plaintiffs

v.

      ORDER

MAINE DEPARTMENT OF HEALTH AND HUMAN
SERVICES,

       Defendant

STATE OF MAINE
Cumberland, ss, Clerk's Office

DEC 22 2014

RECEIVED

Based on the conference with counsel held on the record on December 18, 2014, the court issues the following order on the municipal plaintiffs' order to specify the course of future proceedings:

1. The municipal plaintiffs' motion to file a supplemental pleading adding Counts III and IV to the First Amended Petition for Review is granted without objection. This is without prejudice to the position of defendant DHHS that Counts III and IV are not ripe for adjudication at the present time.

2. The court has considered the pleadings, the positions taken by counsel at the December 18 conference, and the statutes and portions of the General Assistance Manual cited in the pleadings and in the December 19 letter from counsel for DHHS. It concludes that the municipal plaintiffs are entitled to proceed on a motion for a preliminary injunction on the claim set forth in Count II of the First Amended position and on the claims set forth in Counts III and IV that, without having issued any notice of noncompliance after program review, DHHS has failed or

refused to process Portland's claims for reimbursement on a monthly basis and has failed or refused to process Westbrook's claims for reimbursement on a quarterly basis.[1]

3. Accordingly, the municipal plaintiffs shall proceed with their motion for a preliminary injunction, which they have proposed to file on or before December 31, 2014.

4. If the municipal plaintiffs file their motion by December 31, 2014, DHHS shall have until January 15, 2015 to file opposing papers to the motion for a preliminary injunction and may seek an extension of that deadline depending on the papers filed by the municipal plaintiffs.

5. The court shall schedule a hearing on the motion as promptly as possible and in any event before the end of January, and the parties shall advise the court as soon as practicable whether they anticipate an evidentiary hearing.

6. The court reserves decision at this time whether a trial on the merits should be consolidated with the hearing on the motion for the preliminary injunction. M.R.Civ.P. 65(b)(2). This may depend in part on whether there are claims in this case that will not be the subject of the preliminary injunction hearing.[2]

7. At this time, based on counsel's assertion that DHHS is not contending that the constitutionality of 5 M.R.S. § 8058(1)(A) and (B) is being drawn into question, the court does not see a need to notify the Attorney General to allow intervention pursuant to M.R.Civ.P. 24(d).

8. As discussed on December 19, plaintiffs City of Portland and City of Westbrook have not yet filed replies to the counterclaims asserted by DHHS. At the December 18 conference counsel for the municipal plaintiffs proposed that those be filed by December 22, 2014. Because

---

[1] The latter claims may be subject to a ripeness defense as noted above.

[2] In this connection there is currently an equal protection claim brought by intervenors Rehma Rebecca Juma and Suavis Furaha that the court concludes should be asserted in a separate action. See ¶¶ 10-12 below.

2

counsel may not receive this order until after December 22, replies to the counterclaims shall be served and filed on or before December 26, 2014.

9. While the case was pending in federal court, the court (Nivison, Magistrate Judge) issued an order pursuant to Fed.R.Civ.P. 72 granting the motion to intervene by Rehma Rebecca Juma and Suavis Furaha. At the December 19, 2014 conference counsel for the municipal plaintiffs and for DHHS agreed that Juma and Furaha should be allowed to intervene, and the court sees no reason to revisit Magistrate Judge Nivison's order.

10. However, there is an issue as to the scope of their intervention. Juma and Furaha, in addition to joining the municipal plaintiffs in count I of their Intervenor Complaint, have asserted an entirely new cause of action, a claim under the equal protection clause of the Maine Constitution, in count II of the Intervenor Complaint. The normal rule is that intervenors are entitled to be heard on all the issues in the pending action but may not change the action by introducing their own additional claims. 2 C. Harvey, Maine Civil Practice § 24:1, citing *Morris v. Resolution Trust Corp.,* 622 A.2d 708, 714-15 (Me. 1993).

11. On December 19 both counsel for the municipal plaintiffs and counsel for DHHS expressed reservations about including the equal protection claim asserted by Juma and Furaha in this action because of the potential that the equal protection claim could delay entry of final judgment.[3] The court shares these concerns given that it expects that is highly likely that either the municipal plaintiffs or DHHS will want to seek prompt appellate review by the Law Court.

12. Accordingly, while the motion to intervene has been granted and Juma and Furaha shall be heard on all the issues raised by the other parties, Juma and Furaha shall not be entitled to assert an additional cause of action. This order is without prejudice to their right to commence

---

[3] Counsel for DHHS also expressed concerns that went to other issues, including standing.

a separate action to assert an equal protection claim and to seek to have that action heard jointly with this action pursuant to M.R.Civ.P. 42.

13. An issue that was not addressed at the December 18 conference was the municipal plaintiffs' Rule 80C claim and the preparation of the administrative record on that cause of action. Once the preliminary injunction motion has been filed, the court will schedule another conference to address that issue and to set a firm date for the preliminary injunction hearing.

The entry shall be:

The municipal plaintiffs' motion for leave to file a supplemental pleading is granted. The motion to intervene by Rehma Rebecca Juma and Suavis Furaha has previously been granted by the federal court, but intervention shall be limited to the claims raised by the municipal plaintiffs in this action. Procedural order entered. The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: December 22, 2014

Thomas D. Warren
Justice, Superior Court

4

CLERK OF COURTS
Cumberland County
205 Newbury Street, Ground Floor
Portland, ME 04101

CLIFFORD RUPRECHT ESQ
ROACH RUPRECHT SANCHEZ BISCHOFF PC  Defendant's Counsel
66 PEARL STREET SUITE 200
PORTLAND ME 04101

CLERK OF COURTS
Cumberland County
205 Newbury Street, Ground Floor
Portland, ME 04101

RUSSELL PIERCE ESQ     Plaintiff's Counsel
NORMAN HANSON & DETROY
PO BOX 4600
PORTLAND ME 04112-4600

CLERK OF COURTS
Cumberland County
205 Newbury Street, Ground Floor
Portland, ME 04101

ZACHARY HEIDEN ESQ
ACLU OF MAINE FOUNDATION
121 MIDDLE STREET SUITE 301
PORTLAND ME 04101

Intervenors Counsel

---

CLERK OF COURTS
Cumberland County
205 Newbury Street, Ground Floor
Portland, ME 04101

JACK COMART ESQ
MAINE EQUAL JUSTICE PARTNERS
126 SEWALL STREET
AUGUSTA ME 04330-6822

Intervenors Counsel